**MADDEN et al. v. UNITED STATES.**

Circuit Court of Appeals, Ninth Circuit.
June 13, 1927.

Rehearing Denied August 1, 1927.

No. 4955.

**1. Criminal law ⊂∽1167(1)—Inclusion in indictment charging conspiracy to violate National Prohibition Act and Tariff Act of provisions of such statutes held not prejudicial, in view of instructions (Comp. St. § 10201; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]).**

Inclusion in indictment under Criminal Code, § 37 (Comp. St. § 10201), charging conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), of provisions of the two later statutes, and trial court's refusal to quash indictment or to strike out such provisions, *held* not prejudicial, where court instructed jury that indictment was not evidence, and that, as defendants were not charged with violations of such statutes, the provisions thereof in indictment should be disregarded.

**2. Criminal law ⊂∽829(9)—Refusal of defendant's requested instruction that statutory presumptions did not apply held not error, subject being sufficiently covered by instructions given and request being too broad (Comp. St. § 10201; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), refusal of defendant's requested instruction that presumptions of law set forth in National Prohibition Act and Tariff Act have no application *held* not error; subject being sufficiently covered by instructions given, and request being too broad and indefinite.

**3. Witnesses ⊂∽267—Right of cross-examination is not unlimited, but matter is largely within trial court's discretion.**

Every litigant is entitled to fair opportunity to test his opponent's case by cross-examination of his witnesses, but that right is not unlimited, and the manner and extent of its exercise is largely within trial court's sound discretion.

**4. Witnesses ⊂∽266—It is undesirable for more than one attorney to examine or cross-examine same witness, especially where there are many defendants claiming such right.**

Generally it is undesirable for more than one attorney of a single litigant either to examine or cross-examine the same witness, and it is especially objectionable where there are many defendants, each asserting a right to cross-examine; such matters being within the trial court's sound discretion.

20 F.(2d)—19

**5. Witnesses ⊂∽283—Court is not bound, on recall of witness passed on cross-examination, to permit additional examination on other points.**

Ordinarily, where a witness has been passed subject to cross-examination on a specified point, the court is not bound on his recall to permit additional examination on other points, but matter is within court's discretion.

**6. Witnesses ⊂∽277(1, 4)—Defendant, testifying in his own behalf, may be cross-examined as any other witness, but only as to matters involved in his direct examination.**

Where a defendant elects to testify in his own behalf, he may be cross-examined as any other witness, and with like latitude, in respect to matters to which he has testified, but he cannot be compelled to answer as to other facts not relevant to his direct examination.

**7. Witnesses ⊂∽277(2)—Government held entitled to wide range in cross-examining defendant respecting check claimed to have been given for purchase of intoxicating liquor (Comp. St. § 10201; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), in which only defendant who testified denied that cashier's check indorsed by him had been given for purchase of cargo of intoxicating liquor, government *held* entitled to wide range in cross-examining him.

**8. Witnesses ⊂∽277(1)—Defendant having testified on cross-examination that he did not remember transactions, it was not error to permit government to show transactions existed, and were within scope of conspiracy charged (Comp. St. § 10201; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), in which only defendant who testified, in answering questions on cross-examination, stated that he did not remember, or was not sure, or that he could not identify the person or circumstance, *held*, that court did not err in permitting government to attempt to show that transactions referred to existed, and that they were within the scope of the alleged conspiracy, notwithstanding such attempt was unsuccessful.

**9. Criminal law ⊂∽1170½(6)—Cross-examination of defendant respecting transactions not proved, connected with conspiracy charged, held not prejudicial, in view of instruction to disregard (Comp. St. § 10201; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate

National Prohibition Act. tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act of 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), cross-examination of only defendant who testified respecting certain transactions which government failed to show occurred, or that they were connected with conspiracy charged, because defendant admitted nothing, *held* not prejudicial, in view of instructions that questions were not evidence, and that such transactions should be entirely disregarded by jury.

**10. Criminal law ☞438—Photographs of scene of seizure of liquor held competent against defendant not directly identified (Comp. St. § 10201; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act of 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), photographs taken of the scene at time of seizure of intoxicating liquor at wharf *held* competent, as against defendant not directly identified at the trial, where his connection with conspiracy was otherwise shown, it being for the jury to say whether such defendant was one of persons appearing in photograph.

**11. Criminal law ☞402(1)—Secondary evidence of contents of checks offered as bribe to officers making arrest held competent, where accused retained checks (Comp. St. § 10201; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), secondary evidence of contents of checks offered as bribe to officers making arrest was admissible, where accused retained possession of checks, notwithstanding officers might have retained checks.

**12. Criminal law ☞372(6)—Testimony respecting transactions arising before formation of conspiracy charged held competent to show defendants' course of dealing (Comp. St. § 10201; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), testimony respecting landings of intoxicating liquor at pier belonging to government's witness under agreement with defendants *held* not incompetent or irrelevant, because some of transactions occurred before formation of conspiracy charged in indictment; government being entitled to show whole course of dealing between witness and defendants.

**13. Criminal law ☞423(7)—Testimony that truck drivers coming for liquor informed witness that liquor came from certain vessel held competent; drivers being defendants' agents and co-conspirators (Comp. St. § 10201; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act of 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), testimony that truck drivers coming for liquor told government's witness in defendant's absence that liquor landed on witness' pier came from a certain vessel, *held* competent; such drivers being defendants' agents and co-conspirators even though not named as defendants in indictment.

**14. Criminal law ☞351(8)—Testimony that defendant urged government witness to refuse to testify on ground of self-incrimination held competent as tending to show conscious guilt (Comp. St. § 10201; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), testimony that one of defendants urged government's witness to refuse to testify on ground that he could not be required to incriminate himself *held* properly received in evidence, as tending to show conscious guilt of such defendant.

**15. Criminal law ☞1174(1)—That jurors read newspaper accounts of matters leading up to indictment by grand jury held not prejudicial (Comp. St. § 10201; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. § 10138½aa), and Tariff Act of 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), that jurors read newspaper accounts of matter leading up to indictments of one of defendants by grand jury *held* not prejudicial error, where testimony constituting basis of newspaper accounts was fully developed at the trial, and jurors informed trial court that they understood what had occurred, and would not be influenced by newspaper accounts.

**16. Criminal law ☞1186(4)—Conviction of conspiracy to violate National Prohibition Act and Tariff Act held not miscarriage of justice, as affects appellate court's disregard of trial errors (Comp. St. § 10201; Judicial Code, § 269, as amended by Act Feb. 26, 1919, c. 48 [Comp. St. § 1246]; Tariff Act 1922, § 593 [Comp. St. §§ 5841h12, 5841h13]; National Prohibition Act, tit. 2, § 3 [Comp. St. § 10138½aa]).**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St.

§ 10138½aa), and Tariff Act 1922, § 593 (Comp. St. §§ 5841h12, 5841h13), record *held* to show conviction of defendants did not constitute miscarriage of justice, as affects appellate court's disregard of errors occurring during course of trial, under Judicial Code, § 269, as amended by Act Feb. 26, 1919, c. 48 (Comp. St. § 1246).

In Error to the District Court of the United States for the Southern Division of the Northern District of California; John S. Partridge, Judge.

J. H. Madden and others were convicted of conspiring to violate the National Prohibition Act and the Tariff Act of 1922, and they bring error. Affirmed.

K. I. Perky, of Los Angeles, Cal., and James B. O'Connor and R. B. McMillan, both of San Francisco, Cal., for plaintiff in error Madden.

Hugh L. Smith, Charles J. Wiseman, and Williams, Kelly & McDonald, all of San Francisco, Cal., for plaintiff in error Owen.

Nathan C. Coghlan and Edward A. O'Dea, both of San Francisco, Cal., for plaintiff in error Parente.

Joseph Edward Connolly, of San Francisco, Cal., for plaintiff in error Bonacorsi.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The four plaintiffs in error were found guilty upon an indictment charging them and their several co-defendants with a conspiracy to violate criminal provisions of both the National Prohibition Act (Comp. St. § 10138¼ et seq.) and of section 593 of the Tariff Act of 1922 (Comp. St. §§ 5841h12, 5841h13). Within the scope of the charge the evidence tends to show that during the year 1924 they, with others, acting pursuant to a common understanding, purchased the steamship Principio, then at the port of San Pedro, and caused her to be taken to Vancouver, in British Columbia, for a cargo of intoxicating liquor; that after they had taken on approximately 7,000 cases of whisky and large quantities of wine and beer they caused the ship to be brought to the Cordell Banks, a point off the port of San Francisco, where she lay from May 28 to August 20, 1924; and that during this time they succeeded in smuggling into San Francisco and vicinity the whole amount of the cargo.

Each of the four defendants was represented by separate counsel, and now separately brings error and presents a separate brief. In the course of the trial innumerable objections wre made, and to rulings thereon defendants note and number 354 exceptions. The briefs aggregate over 450 pages, and there are more than 400 specifications. To be sure, many of the specifications are either expressly or tacitly abandoned, but even with such eliminations those remaining are too numerous to admit of detailed discussion. Our discussion, however, is not to be taken as a measure of our consideration. We have carefully read and considered the entire record of all the proceedings taken at the trial, as set forth in the elaborate bill of exceptions.

Touching a suggestion of haste and impatience on the part of the trial judge, it is to be said that, while certain isolated expressions exhibited in the briefs may import a degree of irritation, when viewed in the light of the entire record they are found to have but little significance. To make progress at all against the many and persistent objections of numerous counsel separately representing the different defendants, a measure of rigor was necessary, and, upon the whole, the conduct of the case was eminently fair and considerate. During the course of the trial the jurors were repeatedly and earnestly cautioned against improper considerations and outside influences, and in the final charge the rights of the defendants were emphasized and safeguarded with great care. We are fully satisfied that, unless there was prejudice growing out of one or more of the matters upon which we shall briefly comment, defendants were accorded all rights afforded by the law, and had a fair trial.

[1] The contention most insistently urged by the plaintiffs in error is the improper inclusion in the introductory part of the indictment of the provisions of section 3 of title 2 of the National Prohibition Act (Comp. St. § 10138½aa) and section 593 of the Tariff Act of 1922. Admittedly, the pleading is subject to criticism in this respect, and we have only to consider the effect of the impropriety. The language quoted from the National Prohibition Act is so plainly innocuous that it may be passed without further comment. Section 593 of the Tariff Act, as set out in the indictment, provides that it shall be an offense for any one knowingly or fraudulently to bring into the United States any merchandise contrary to law, or with knowledge of the unlawful importation, to receive, buy, sell transport, or conceal such merchandise. Then follows the provision upon which defendants chiefly rely, namely: "Whenever, on trial for a vio-

lation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury." Comp. St. § 5841h13.

By motions to quash and in other ways defendants sought relief, but the court held that being merely surplusage the objectionable matter did not invalidate the indictment, and also that under controlling decisions it could not be stricken out, and further, that its inclusion and retention would not necessarily be prejudicial. In this view it is thought there was no error, and we are clearly of the opinion that in fact no prejudice resulted to the defendants from the course pursued. In qualifying the jurors, and in the final charge, if not at other stages of the trial, the court took care to remind the jurors of what they had apparently learned in the trial of other cases during the term, namely, that the indictment was not evidence, but that it merely contained charges which if not established by the evidence must be ignored. And it is not pretended that any proof was offered to establish the existence of the alleged statutory provision. Likewise, both at the opening of the trial and again in the final charge, the jurors were specifically and clearly instructed that the defendants were not charged with a violation of either the Prohibition Act or the Tariff Act, and however much they might be convinced by the evidence that the defendants, or any one of them, had been guilty of violating the provisions of these acts, they could "not be found guilty of that, but only of the thing which is here charged, and that is a violation of section 37 of the Criminal Code of the United States, to wit, a conspiracy." And thereupon, in the final instructions, the court read section 37 (Comp. St. § 10201), being the conspiracy statute, and elaborately and fairly explained its meaning, and what must be proved before a conviction could be had thereunder. While the record contains no direct statement upon the subject, if, as we are inclined to do, we infer that the indictment went to the jury room, it is quite improbable that the jurors gave any consideration to the objectionable averment, and that in the face of the instructions they gave any effect to the alleged presumption is wholly incredible.

[2] It was not error to decline defendant Parente's requested instruction VIII, advising the jury that "the presumptions of law set forth in the National Prohibition Act and the Tariff Act of 1922 have no application," for the reason, first, that the subject was sufficiently covered by the instructions given, and, second, the request was too broad and indefinite.

No abuse of the court's discretion is shown in the manner of impaneling the jury and the interrogation of jurors touching their qualifications. The facts are not substantially unlike those recited in Bradshaw v. United States (C. C. A.) 15 F.(2d) 970, 971.

[3] It is urged, especially by Parente, that the court unduly restricted the cross-examination of certain witnesses, more particularly Fesca, Martin, and Crivello. Every litigant is to be accorded a fair opportunity to test his opponent's case by cross-examination of his witnesses. "The right to a reasonable opportunity for cross-examination at an appropriate stage and in relation to matters then open for consideration is undisputed in any quarter." Chamberlayne's Handbook on Evidence, § 172. But, as implied in the definition, the right is not unlimited, and of necessity the manner and extent of its exercise must in a large measure be left to the sound discretion of the trial court. We find here no abuse of that discretion.

[4, 5] Generally it is undesirable for more than one attorney of a single litigant either to examine or to cross-examine the same witness, and especially was it objectionable here, where there were so many defendants, each asserting the right to cross-examine. Ordinarily, where a witness has been passed, subject to cross-examination upon a specified point, the court is not bound, upon his recall, to permit additional examination upon other points. These were matters clearly within the discretion of the court. Adequately to exhibit the other instances where the cross-examination was restricted, it would be necessary to explain at length the circumstances, if not to set forth the larger part of the entire testimony given by the witnesses, and this would be impracticable. Upon a full examination it will appear that in some cases, a striking example of which is the subject of Fesca's nativity and citizenship, if there is any ground for criticism at all, it is that the court was overindulgent. The best test, perhaps, is to be found in a consecutive reading of the entire record, and upon resorting to such test we are satisfied that in no instance was a fair opportunity denied for all reasonable cross-examination.

[6] The principal contention made on behalf of the defendant Owen, who alone of the defendants gave testimony, is that the court over his objection permitted the district attorney to

press upon him questions beyond the legitimate scope of cross-examination. Concerning the rule of law there is no dispute. Where a defendant elects to testify in his own behalf he may be cross-examined as any other witness, and with like latitude in respect of matters to which he has testified; but he cannot be compelled to answer as to other facts not relevant to his direct examination. Fitzpatrick v. United States, 178 U. S. 304, 20 S. Ct. 944, 44 L. Ed. 1078; Tucker v. United States (C. C. A.) 5 F.(2d) 818, 823.

[7] The testimony for the government tended to involve Owen, who resided and was in business at Los Angeles, in the conspiracy and its execution at several points. The liquor was taken on the Principio at Vancouver the latter part of April. The district attorney had put in evidence a cashier's check of the Bank of Italy for $7,500, issued to Owen on April 19th. It bore the indorsements of Owen and Parente, and further indorsements, indicating that it passed through the Royal Bank of Canada on April 28th, and was paid through the clearing house at San Francisco four days later. The obvious theory of the government was that the check had been used in purchasing the Principio's cargo.

In his direct testimony Owen stated that the check was what it purported to be, and that he had indorsed it, but categorically denied that either it or its proceeds had been used for the purchase of liquor, or for any related purpose within the scope of the alleged conspiracy. He also denied overhearing a conversation or making a statement in the Hotel Vancouver, testified to by Fesca, a witness for the government. He also denied visiting the Principio while she was lying on the Cordell Banks, or being in San Francisco in June, July, or August, 1924. Upon his cross-examination it was brought out that he, Parente, and Bonacorsi had gone from Seattle to Vancouver together, at the time the Principio was there, and occupied the same suite of rooms in the hotel.

As to the check there was elicited from him the highly improbable story that he went to Vancouver with the possibility in mind of purchasing hotel property, and took the check along for that purpose; that he inquired at one place, but made no purchase; that within two or three days at most after arriving at Vancouver, complying with a request of Parente, a San Francisco tailor with whom he had had only negligible dealings, he agreed to let him have $2,500, upon his statement that he had been gambling and was out of funds; and that for that purpose he indorsed the check and turned it over to Parente, who had it cashed and delivered to him $5,000, retaining the balance as a loan, for which he gave no security.

In the face of such an explanation of what was otherwise a highly incriminating piece of evidence, clearly the government was entitled to a fairly wide range for inquiring into the financial standing and operations of the witness. Accordingly the court permitted the district attorney to elicit the fact that in the spring of 1924 Owen, whose name is Ralph H., carried two bank accounts, neither of which, however, was in his name; one being in the name of Ralph Palmer, and the other in the name of R. H. Henry. He was further interrogated at length in an effort to get him to state that he had had some large transactions with the Consolidated Importers Company, Limited, a corporation of Vancouver with offices in San Francisco, through an alleged agent of that company by the name of Phil Broetman, or one George Norgen, and particularly that about October 10, 1924, he had given to the agent of that company a check signed in the name of R. H. Henry for $20,498.

[8] To nearly all of the numerous questions put to him he answered he did not remember, or was not sure, or that he could not identify the person or the circumstance. Under these circumstances, we do not think it was error for the court to permit the government to make the attempt to show that there were such transactions as were referred to in the inquiry, and that they had to do with the operations of the Principio within the scope of the alleged conspiracy. And error is not to be predicated upon the attempt, merely because it was unsuccessful.

[9] With the exception of the bank accounts carried in assumed names, Owen admitted nothing, and at the end of it all the court clearly instructed the jurors that questions were not evidence, and that they were to be governed by answers only, and not by inferences from questions, all of which the jurors stated they understood to be their duty. And as to the bank accounts the court in his final charge expressly directed the attention of the jury to the fact that the government had failed to show that the accounts had any relation to the conspiracy, and hence the evidence should not have been received, and that all of it should be entirely disregarded. The whole incident is therefore thought to have been without prejudicial error. Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Wells v. United States (C. C. A.) 9 F.(2d) 335, 337; Furlong v. United States (C. C. A.) 10 F. (2d) 492, 495.

[10] We find no merit in the assignments of Bonacorsi relating to the evidence of an occurrence upon one of the wharves at San Francisco August 12, 1924. His connection with the conspiracy was otherwise shown, and at the time and place stated he was found by one of the customs officers in possession of a considerable quantity of beer. While at the trial he was not directly identified, photographs of the scene at the wharf had been taken, and these were identified by witnesses who were present when they were taken. They were competent, and it was for the jury to say whether or not one of the persons appearing therein was Bonacorsi. The beer was sufficiently identified by the circumstances to warrant a finding that it came from the Principio.

[11] Some of the witnesses testified that at the time Bonacorsi tendered to the officers two checks, which he took from his pocket, to "settle" the matter. The checks were left in his possession, and hence, under a well-established rule, secondary evidence of their contents was competent. It is quite immaterial that the officers might have retained, but did not retain, possession of the checks.

As to assignments urged more particularly by defendant Madden: That part of the testimony of Volkman relating to certain operations with alcohol, to which objection was made, is chargeable to the cross-examination more than to the direct. It was not of great importance, but it was competent for the very limited purpose for which the court advised the jurors they could consider it.

[12] Rasmussen resided at Inverness, and testified that some time in the late winter or early spring of 1924 he had agreed with Madden to permit liquor to be landed at his pier, and that on several occasions it was so landed, and that at times Madden and Parente were there giving directions and assisting in hauling it away. The testimony was not incompetent or irrelevant merely because some of these transactions antedated the arrival of the Principio at Cordell Banks. Some of them were apparently after such arrival, and, that being true, the government was entitled to show the whole course of dealing between the witness and the defendants, even though the original understanding and some of the acts pursuant thereto may have been had and done prior to the formation of the conspiracy. In no other way could the bearing of the transactions falling within the period of the conspiracy have been made plain.

[13] When the last load was landed, about the middle of June, the truck drivers, in the absence of the defendants, informed Rasmussen that the liquor which was then on the pier had come from the Principio. The testimony was competent. Madden and Parente had arranged with the witness for the landing of liquor and had advised him that trucks would get it. The drivers were in a very large sense agents of the defendants, and were clearly co-conspirators, even though not named as defendants in the indictment.

[14, 15] Another incident in connection with the witness Rasmussen is given large place in the record. He and his wife were in attendance at the trial, under subpœna, as witnesses for the government. Before they testified, Madden and another man came to their hotel, after they had retired for the night, and, awakening them, asked to be admitted. Upon being let in, they engaged Rasmussen in conversation relative to the trial, and, referring to the fact that he was under subpœna, they urged upon him that he ought to have the advice of a lawyer. After some hesitation and discussion, he consented, and soon after the two men left a lawyer came into the room. His advice was that Rasmussen could decline to testify upon the ground that he could not be required to incriminate himself.

Apparently fearful and perplexed as to what he ought to do, the next morning he related the incident to the district attorney, who forthwith presented it to the grand jury then in session. The grand jury promptly returned an indictment against Madden and others, and the local press carried accounts of the matter with conspicuous headlines. Bringing in these published accounts, and showing that most of the jurors had read one or more of them, and also pointing to the action of the grand jury, counsel for the defendants moved for a discontinuance of the trial and a discharge of the jury.

Both Rasmussen and his wife testified before the jury as to what occurred at their hotel. Under a familiar rule, such testimony was properly received against Madden, as tending to show a consciousness of guilt. In that way, too, the jurors were definitely and fully advised of just what basis, in fact, there was for the newspaper accounts and for the action of the grand jury. The court pointedly interrogated the jurors, and was informed by them that they understood their duty, and that they were and would be in no wise influenced by what had occurred. Thereupon the motion was denied, and the trial proceeded. In view of the circumstances as related, and the fact that the jury had directly from Rasmussen and his wife statements under oath

as to the entire basis in fact of the news accounts, we are satisfied that no prejudice resulted.

[16] By express provision of law (Judicial Code, § 269, as amended 40 Stat. 1181 [Comp. St. Supp. 1919, § 1246]), we are admonished, upon hearing a writ of error in any case, whether civil or criminal, to give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties. Upon such an examination of the record, not only are we unable to say affirmatively that there has been a miscarriage of justice, but, on the contrary, it is difficult to see how fair-minded jurors could have reached a different conclusion. True, much of the direct evidence was given by implicated witnesses, but, considering its circumstantial character and inherent probability, together with the undisputed corroborative circumstances, it carries conviction of its truth. The attitude of at least some of these witnesses is disclosed by the following excerpt from the testimony of one of them:

In the cross-examination as to why he had given information to the government officers, the question was suggested, "You would not have volunteered anything like that, would you?" His answer was, "I hope to tell the world I wouldn't;" and continuing he said, "They told me—why, it was just like opening up the log of a ship and telling you her position upon a certain day, and where you were and everything, from their word of mouth, so that you would know that somebody right alongside of you must have told everything. So what is the use of a man lying when he is caught dead to rights? Why not enter with a clean shirt and admit what you remember? Yes; if I had a chance, I will admit I would have tried to get away."

Judgment affirmed.