## BRINK v. UNITED STATES.
### No. 6106.

Circuit Court of Appeals, Sixth Circuit.
June 27, 1932.

Allen C. Roudebush, of Cincinnati, Ohio (Harry H. Shafer, of Cincinnati, Ohio, on the brief), for appellant.

Harry A. Abrams, of Cincinnati, Ohio (Haveth E. Mau, of Cincinnati, Ohio, and William A. Rogers, of Dayton, Ohio, on the brief), for the United States.

Before MOORMAN, HICKS, and SI-MONS, Circuit Judges.

HICKS, Circuit Judge.

Appellant and James H. Brink, Harry Schultz, and Walter Keller, were indicted for a conspiracy to violate the National Prohibition Act under section 88, title 18, U. S. C. (18 USCA § 88). Brink alone was put upon trial. He was convicted.

There are numerous assignments of error. Many of them relate to matters unexcepted to in the court below and therefore present nothing for review.

Several assignments challenge the denial of a directed verdict. They are all overruled. We have examined the evidence and find it sufficient to submit the case to the jury.

1. Earl Marshall was the principal witness for the government. He had served a sentence in the penitentiary for a violation of the Prohibition Act. He testified in substance that his conviction grew out of his employment by appellant to transport liquor and that appellant had agreed to pay him $45 per week, or a total of $7,200, for the time he served in prison. During cross-examination Marshall was asked: "Did you get any lawyer to enforce the collection of this $7200.00?" He answered, "No sir." Thereupon counsel asked the witness: "Q. I will ask you if this question was asked you and whether you answered according to what I read?" (Reading from a transcript of witness's testimony before the United States Commissioner): "Q. Who was the man? A. Charles Dornette. Q. You went to see Charles Dornette, that was your lawyer was it not? A. I guess so." Thereupon the court stated in substance that an unwarranted inference might be drawn from the manner in which this matter was being presented and required counsel to read the entire pertinent record of Marshall's testimony before the commissioner. The record when read justified the court's comment and action. It is the duty of the court to see that testimony is not misunderstood. Kettenbach v. U. S., 202 F. 377, 385 (C. C. A. 9); Rudd v. U. S., 173 F. 912, 914 (C. C. A. 8).

2. On recross-examination Marshall was vigorously examined by counsel touching this $7,200. In the course of the examination the court said: "You are making a great deal of confusion out of something that he has testified about, that it was $45.00 a week, and began along about the time he was employed, and it ran through all that time down to and through the time he was in the penitentiary at Atlanta, and it was not paid, and amounted to $7200.00, isn't that the purport of your testimony"—to which the witness responded: "Yes." We find nothing in this remark by the court that tends to affect any substantial right of appellant. See Hargrove v. U. S., 25 F.(2d) 258, 262 (C. C. A. 8). Marshall had been questioned fully touching this matter of $7,-200 upon his original cross-examination, and it was the duty of the court to keep the cross-examination within reasonable limits.

3. The question arose whether the telephone company's record of a certain long distance telephone call (Exhibit 7A) was admissible in evidence. During the examination of Miller, a supervisor of the telephone company, the court asked: "Has that got something written on it—where was that writing put on that piece of paper?" The witness answered: "Brunswick, Georgia." Thereupon the court said: "I should not have put it that way." This answer was objected to upon the ground that it was evidence of a written instrument which had not been introduced. The exception took the form of a motion to strike out all of the testimony of the witness. We think the motion was properly denied.

4. Upon cross-examination of the government's witness Speiser, counsel asked: "How about the time you killed that man?" The district attorney objected. Thereupon the following colloquy took place between the court and counsel:

"The Court: Let us find out. Were you ever convicted of killing a man?

"The witness: Never.

"The Court: Have you any evidence that he was convicted of killing a man?

"Mr. Shafer: I was just told of it over the table.

"The Court: That question put by Mr. Shafer was entirely improper. If he has any evidence of that he may put the question.

"Q. Were you ever charged with that? (Question objected to; objection overruled.) A. Yes, and dismissed in Police Court. Never bound over to the grand jury, it was in self-defense.

"The Court: You could have found that out before you asked the other question. I am going to insist in this case, as in all cases, because it is becoming too frequent in court, that you do not ask questions that you have no right to ask. It leaves an ugly impression.

"Mr. Shafer: I would like to take an exception to the remark of the Court.

"The Court: You may take an exception, and the record may show that this Court takes exception to counsel asking questions for which they have no basis, and on which they have attempted to make no investigation, for the sole purpose, as the Court thinks, and wants the record to show, as the Court does think, of leaving an ugly inference to the jury. You may take an exception to that, if you wish.

"Mr. Shafer: Note an exception. I want to say to your Honor I got in this case on short notice, and I come up here and they spring a surprise witness on me, and I have to do the best I can.

"The Court: You do not have to ask questions for which there is no basis."

These remarks of the court are complained of. We think that under the circumstances they were not improper. The tendency of this line of cross-examination was to create in the minds of the jury an unfavorable and wholly unjustified impression of the witness Speiser.

5. Upon cross-examination Speiser was asked: "You remember about all the other things in the case that you want to remember, can't you remember what you paid Brink for the whiskey?" Thereupon the court remarked: "The question is not a proper question and should not have been put by counsel in that form." This remark is assigned as error. We see nothing either erroneous or prejudicial in it.

6. During the examination of its witness White, the government introduced Exhibit 8A. This exhibit was a receipt dated August 21, 1930, to Harold (Harry) Schultz, one of the alleged conspirators, for fines and costs paid to the municipal court at Mansfield, Ohio. Fillbrandt, a government witness, had testified that on August 20, 1930, he, in company with appellant, went to Mansfield and saw a man named Schultz who had been caught there with a load of liquor and had employed an attorney for him. When Exhibit 8A was introduced, the court inquired in substance whether Schultz was the same man referred to by Fillbrandt. His exact language was: "This man Schultz is the same man?" Upon exception the court said: "The Court: I will withdraw my remarks, Gentlemen, you will not consider what the Court said, as to the man about whom the Reverend Fillbrandt testified, and the man's name Schultz; my statement that that was the man you should not consider, I should not have put it that way. I want to know whether the man they are talking about was the one named Schultz." We find nothing improper or prejudicial in this incident.

7. Upon the introduction of certain documentary exhibits taken from the room of appellant one of appellant's counsel who had come into the case after the beginning of the trial stated that he wished to have the record show that these exhibits took him by surprise. The court permitted this, but called attention to certain incidents of the trial which indicated that other counsel, three in number, could not have been surprised. There was nothing improper in these comments by the court. They appear to have been made in an effort to keep the record free from confusion and there is no intimation from appellant that he, himself, was surprised by the introduction of these exhibits. See Gridley v. U. S., 44 F.(2d) 716, 736 (C. C. A. 6).

8. Robert Budd, witness for appellant, testified that Marshall told him that the liquor for the transportation of which he was convicted and which the government insisted was appellant's liquor, belonged to him (Marshall). Then counsel asked Budd the following question: "I will ask you whether you would believe Mr. Marshall under oath?" The answer was: "I don't think I would." This situation drew from the court the following question: "Then if Mr. Marshall told you that this was his liquor and that he would have made $2000.00 out

of it, you would not believe that would you, even if he swore it?" The witness answered: "Not now any more." We do not think that this question and answer violated any substantial right of appellant.

9. On cross-examination the government's witness Albert Faehr was asked: "You say in this letter that you did not threaten Mr. Brink if he did not give you this money?" The court sustained an objection upon the ground that the letter was the best evidence of what it contained. This was not erroneous.

10. Upon cross-examination of the government's witness Mrs. Marshall, she was asked to disclose a conversation, heard by her, between Dornette and Marshall. The court sustained an objection thereto upon which action error is assigned. There is no merit in the complaint because Mrs. Marshall was later permitted to detail substantially all of this conversation. Dornette had been counsel for Marshall in the case which resulted in Marshall's imprisonment, and this conversation between Dornette and Marshall occurred after Marshall had been released from prison. The subject of it was whether appellant would live up to his alleged agreement to pay Marshall $7,200 for the period Marshall had spent in prison.

Upon re-examination of Mrs. Marshall, the government introduced certain letters (Government's Exhibits Nos. 4 and 5) written by Dornette to Marshall while the latter was in prison. Appellant assigns the introduction of these letters as error. We do not think that he is in a position to make this claim. The subject-matter of these letters was identical with that of the conversation between Dornette and Marshall, which Mrs. Marshall was allowed to relate upon the urgent insistence of appellant.

11. Error is assigned upon the introduction of Government's Exhibits 8, 8A, 9, and 12. Exhibit 8 was a receipt to Harold (Harry) Schultz similar to Exhibit 8A heretofore referred to. Exhibit 9 was a telephone toll service statement in which tolls from Savannah and other distant points were charged to appellant's telephone. Exhibit 12 was a certificate of a passenger car registration for 1930 issued to Schultz by the State Department of Ohio for a Ford coupé. These documents were relevant.

Appellant was arrested in his home by a Prohibition Agent without a warrant and these papers with other documents were then and there seized by the agent without a search warrant. Doubtless the search was unlawful (U. S. v. Lefkowitz and Paris, 52 S. Ct. 420, 76 L. Ed. 877, decided by the Supreme Court April 11, 1932), but we find no reversible error in the introduction of these exhibits. When appellant was arrested he was taken before a United States Commissioner on December 12, 1930, for a preliminary examination and was represented by counsel. He was not indicted until May and was not tried until July, 1931. In the meantime no effort had been made to recover any of the documents seized or to suppress their use as evidence upon the ground that they were not subject to seizure although certain ones of them had been delivered by the district attorney to appellant's counsel upon his request for purposes not connected with the trial. We think therefore that the objection upon the trial to the introduction of these exhibits came too late. Segurola v. U. S., 275 U. S. 106, 112, 48 S. Ct. 77, 72 L. Ed. 186.

12. A number of assignments of error are based upon the admission of records of telephone companies purporting to evidence conversations from the telephone in appellant's home to long-distance points. There is no merit in these assignments. These telephone records tend to corroborate the testimony of the government's witnesses Faehr and Marshall. They were competent and their weight was a question for the jury.

13. After the case was closed the court reopened it and allowed the government to introduce highly relevant testimony tending to show the condition in which appellant kept his bank accounts. Errors are assigned upon this action of the court. They are overruled. This was a matter within the trial court's discretion. Horowitz v. U. S., 12 F.(2d) 590, 591 (C. C. A. 5); Jianole v. U. S., 299 F. 496, 500 (C. C. A. 8).

14. We have examined all other assignments of error properly before us and find nothing therein which substantially affects the rights of appellant. Title 28, § 391, U. S. C. (28 USCA § 391).

The judgment of the District Court is accordingly affirmed.