**ROCCHIA v. UNITED STATES.**

No. 7829.

Circuit Court of Appeals, Ninth Circuit.

Aug. 12, 1935.

George J. Hatfield and Frank J. Perry, both of San Francisco, Cal., for appellant.

H. H. McPike, U. S. Atty., and Thomas G. Goulden, Asst. U. S. Atty., both of San Francisco, Cal., for the United States.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

Appellant was convicted upon six counts of an indictment which charged violations of the internal revenue laws with respect to the possession of a still without registering

the same; failure to give notice and file bond; carrying on the business of a distiller with intent to defraud the United States of taxes; making and fermenting mash; and the manufacture of alcohol. From the judgment entered upon the verdict of the jury this appeal is taken.

Appellant claims error in the denial by the District Court of his motion to suppress the evidence seized by the officers upon the ground that the search and seizure were unlawful and in violation of appellant's constitutional rights under the Fourth and Fifth Amendments to the Constitution of the United States. Upon the same ground appellant claims error in admitting in evidence over appellant's objections the testimony of the officers who made the search and seizure and certain exhibits which were thereby obtained.

The facts concerning the search and seizure may be summarized as follows:

On January 9, 1933, William P. Goggin, John M. Burt, and Keith De Kalb, investigators of the Department of Justice, made an investigation of the premises in question and known as 60 Brady street in San Francisco, after Investigator Goggin informed the other two officers that he had just received information from a reliable source that a distillery was unlawfully in operation at said address. Their investigation centered on these premises at about 4:30 in the afternoon of that day. As the officers approached the building they each observed a strong odor of fermenting mash and distillation which became stronger as they neared the building; as they neared the building they also observed the hum of motors and the roar of a gas burner operating under pressure; the officers had each had previous experiences in investigating and seizing illicit distilleries while in operation and arresting the operators thereof, and from this experience, coupled with the smell and sounds emanating from the building, they knew that a distillery was in operation therein. They further testified that the building was a concrete warehouse type structure approximately 50 feet wide by 100 feet deep; it bore a sign to the effect that the premises were being used in a drayage business, but the officers looked in and saw no drays, and there was no sign evidencing it to be a licensed distillery as required by law; before entering the building they went down the first street intersecting Brady street, which put them in a way alongside of the building and to the rear thereof; the front of the building contained a large sliding door in the center of the building through which trucks or other large vehicles might enter or leave, and that close by was a small doorway. They further testified that the large sliding door was not locked nor fully closed; that looking through the window in that large door the officers could observe a partition stretching across the building approximately 25 feet back of the entrance, which partition appeared to contain another large doorway, almost totally obscured by a pile of cartons in front thereof, and through the top portion of this doorway they could observe that the portion of the building back of the partition was lighted. They also observed that the portion of the building between the street and the partition just mentioned was likewise subdivided by a partition running from the front of the building back to the partition separating the lighted portion of the building.

The officers entered the building through the sliding door and entered the distillery portion of the building by way of doors leading respectively through the two partitions mentioned in the front portion of the building, and found a large alcohol distillery in full operation and arrested the operator, Frank Ferrari. At the time of the arrest the distillery was comprised of a 500-gallon still and a 250-gallon still, and was capable of producing between 500 and 1,000 gallons of alcohol per day; that the distillery likewise contained aside from the ordinary machinery, hoses, vats, etc., approximately 30,000 gallons of corn sugar mash and 1,000 gallons of alcohol and whisky.

About 6 o'clock on the same evening, one Silvio Cappi entered the building with the use of a key through the small front door and was proceeding towards the portion of the building wherein the stills were located when he was arrested by the officers. The key found on his person fitted the door to the building and was identical with that found on defendant Ferrari. Shortly thereafter two of the officers left with their prisoners, and Investigator Burt remained in charge of the seizure. He left the light of the distillery burning and left a blower or fan in operation. About 8:10 o'clock of that evening and while he was in the front portion of the building, which was in darkness, he observed a man on the sidewalk and heard him insert a key into

the lock of the small door and saw him enter the building and proceed to the rear where the distillery was located. He was arrested by Officer Burt and questioned and searched in the distillery and found to have a key identical with those in the possession of the other defendants, Cappi and Ferrari, together with numerous documents and a large quantity of currency. This person was appellant, who at that time gave the name of John Caruso, although documents were found in his possession which would indicate that his true name was Antonio Rocchia. Investigator Burt retained all documents but returned the currency to the appellant.

■ There is no formula for the determination of reasonableness of the search and seizure. Each case is to be decided on its own facts and circumstances. Go-Bart Importing Co. v. U. S., 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374. In Donahue v. U. S., 56 F.(2d) 94, 97, this court held that a search and seizure without a warrant was justified under circumstances very similar to those in the case at bar. In that case the agents had received information that Donahue intended to make a second run of liquor at his ranch on the next day, which was Sunday. The next day the agents went there, and as they approached the house they detected the odor of liquor and heard the still in operation. This court stated: "If the information which had reached the officers prior to the arrest and search, that is, prior to the opening of the door of the dwelling house, and the knowledge they had gained through their senses of smell and hearing, was sufficient to give them probable cause to believe that a felony was being committed in their presence, they were entitled to enter the dwelling and make the arrest, United States v. Borkowski (D. C.) 268 F. 408; McBride v. United States (C. C. A.) 284 F. 416; Janus v. United States (C. C. A.) 38 F.(2d) 431, 436; 28 USCA § 504, and, as an incident thereof, search the premises, United States v. Borkowski, supra (D. C.) 268 F. 408; Vachina v. United States (C. C. A.) 283 F. 35; McBride v. United States, supra (C. C. A.) 284 F. 416. See, also, Garske v. United States (C. C. A.) 1 F.(2d) 620, and cases there collated. That they had reasonable cause to believe that a felony was being committed in their presence is clear, and they therefore had a right to enter the premises for the purpose of making an arrest, and, as an incident thereto, to seize property found in appellant's control, which it was unlawful for him to have." Citing cases.

■■ Likewise, in the case at bar, the officers had reasonable cause for believing that a crime was being committed in their presence and therefore had a right to enter the premises and arrest the attendant without first obtaining a warrant. As incident thereto, they had the right to search the premises and seize property used in the commission of the crime. As stated in Pong Ying v. U. S. (C. C. A. 3) 66 F.(2d) 67, 68: "To throw a shield of constitutional protection over a lawbreaker who has himself created the evidence on the outside of his premises that the law is being violated within such premises is to make the constitutional provision not a means of protecting against unwarranted entrance, but a barrier to lawful entrance by a vigilant officer where the evidence of lawbreaking comes from the premises thus sought to be shielded from all efforts to enforce the law." Having lawfully entered the premises and arrested the attendant in charge, there was nothing illegal in the arrest of the appellant when he subsequently entered the premises under circumstances which reasonably led the officer to believe that appellant was connected with the crime. The arrest of appellant being lawful, as an incident thereto the officers had a right to search his person and seize the papers found thereon.

■ We conclude that appellant's constitutional rights were not invaded by the search and seizure complained of. The motion to suppress the evidence made prior to the trial was properly denied.

■ During the trial the appellant objected to the introduction of photostatic copies of documents that had been taken from his possession upon the ground that they had been obtained by an unlawful search and seizure. In making this objection counsel offered to prove in support thereof that the property had been ordered returned by the District Court on January 30, 1933, prior to the return of the indictment in the case at bar, and after a preliminary hearing before the Commissioner at which the Commissioner determined that it had been obtained by an unlawful search and seizure and dismissed the appellant, and that the search there involved was the identical search involved herein. This objection was in effect a renewal of the motion to sup-

press the evidence which had been previously denied by the trial court. It has been uniformly held that a motion to suppress made upon the trial comes too late where the defendant has knowledge of the seizure long prior to the trial and neglects to make such a motion before the trial. Segurola v. U. S., 275 U. S. 106, 48 S. Ct. 77, 72 L. Ed. 186; Patterson v. U. S. (C. C. A.) 31 F.(2d) 737; Brink v. U. S. (C. C. A.) 60 F.(2d) 231. The indictment was returned in this case on November 14, 1933. On December 23, 1933 appellant made a motion to suppress the evidence. This motion was heard January 6, 1934. The motion to suppress was amended February 2, 1934; on February 3d the amended motion was denied; thereafter, on February 10, 1934, the appellant pleaded not guilty and the case was called for trial June 26, 1934.

■ Neither in the original motion to suppress the evidence nor in the amended motion was the effect of the order of the District Court made in the previous proceeding directing the return of the evidence to the appellant presented to the trial court. If the question of the effect of the previous order had been raised on the motion, it would be necessary to determine whether or not the former order was res judicata as to the unlawfulness of the search and seizure. Not having been presented at that time, the attempt to raise the question at the trial by way of objection to the evidence was too late.

■ The appellant also objected to these photostatic copies on the ground that they are not the best evidence. The objection being based partly upon the ground that the original papers had been returned to appellant and were not in the possession of the government was in effect a statement that they were in his possession and not in the possession of the government. That being true, secondary evidence was admissible in the absence of a tender of better evidence by appellant. Watlington v. U. S. (C. C. A.) 233 F. 247, 249; Trent v. U. S. (C. C. A.) 228 F. 648; McKnight v. U. S. (C. C. A.) 122 F. 926; Lisansky v. U. S. (C. C. A.) 31 F.(2d) 846, 67 A. L. R. 67; Madden v. U. S. (C. C. A.) 20 F.(2d) 289. One of the papers taken from appellant upon his arrest and returned pursuant to the order of January 30, 1933, was a note signed, "Von Husen, Inspector of the San Francisco Water Department," calling attention to the fact that the water meter at the premises in question was running wide open. Von Husen was called as a witness and over the objection of appellant identified a photostatic copy of this note, which had previously been received in evidence, as a true copy of the note he had left under the door at 60 Brady street, San Francisco. The only objection interposed was the same as that already disposed of, namely, that the original of the paper had been obtained in an unlawful search and seizure and had been ordered returned to appellant by the District Court. In his brief appellant contends that the evidence pertaining to this note was incompetent for the reason that the note was addressed to no one, and was neither answered nor acted upon. This point cannot be raised for the first time on appeal.

The fourth ground urged for reversal is that the court erred in allowing a finger print card dated October 1, 1930, signed Antonio Rocchia to be admitted in evidence. This card signed by the appellant was admitted as an exemplar for comparison of the signature of the appellant thereto with the signature Joseph Rossi signed to the lease of the premises occupied by the distillery. The assignment of error does not contain the substance of the exhibit which was introduced and thus does not comply with our rule 11 which requires that the evidence which is the subject of the objection shall be set out in the assignment. The assignment is as follows:

"The court erred in admitting documentary evidence over the objection of the defendants as will more fully appear as follows:

"Mr. Goulden: I neglected or I overlooked requesting that Government's Exhibit No. 7 for identification be admitted in evidence. Professor Heinrich identified it, that being the finger print card with the signature Antonio Rocchia upon it.

"Mr. Perry: I object to it as immaterial, irrelevant, and incompetent, and upon the ground that it is prejudicial to the rights and interests of my client to introduce this document in evidence bearing his purported finger prints and his signature; it violates the constitutional rights of the defendant, particularly as respects the Fourth and Fifth Amendments.

"The court: Objection overruled. It will be received as U. S. Exhibit 14 in evidence.

"Mr. Perry: Exception."

The exhibit, besides bearing the signature of Antonio Rocchia and the finger-

prints, also contains notation as follows: "Case No. 20895. Date of Arrest, October 1, 1930. Charge—Possession still and whiskey; Criminal History. Antonio Rocchia No. 20226. San Francisco charge mdfg."

In his brief appellant states: "The only admitted purpose for which said fingerprint card was received in evidence was as an exemplar to prove the handwriting on the lease. The statement of his prior criminal record on said fingerprint card affected his character and was therefore prejudicial."

■ There was no occasion to present to the jury that portion of the exhibit with reference to his previous misconduct. The objection does not call attention to this objectionable feature of the fingerprint card and apparently it was understood that the signature and the fingerprints were the only things to be considered by the jury. The court called attention to this in his instructions as follows: "I might state in that connection, gentlemen, that there were a number of exhibits which were placed in evidence which were not displayed to the jury. I do not know why that was not done, or whether it was just an oversight. In determining the issues in this case, if you desire to see them yourselves and view these exhibits I suggest that you ask for them when you go to your deliberations if you want to view them." A juror requested the exhibits and the court inquired of counsel if they had any objection to the exhibits being submitted to the jury, and both the United States attorney and the appellant announced that they had no objection. By this express consent the appellant waived his objection, if any, to the presentation of the objectionable part of the exhibits to the jury.

■ The appellant alleges misconduct on the part of the court and counsel in connection with the introduction of photostatic copies of the documents which had been taken from the appellant at the time of his arrest and which had been subsequently returned to him. During the course of the colloquy between court and counsel, the United States attorney sought to meet this objection by offering to present the originals if they were produced by the appellant. This offer was germane in view of the objection of the appellant that the evidence offered by the government was not the best evidence. If the appellant desired to produce the better evidence and substitute it for that offered by the government,

he would no doubt have had the right to do so. He could not be compelled to do so. The court did not undertake to compel the production of the documents, although the matter was discussed in the presence of the jury and it was intimated by the court that the appellant could be compelled to produce the documents in question. To meet appellant's contention that he had been prejudiced by the remarks of the court, the court instructed the jury as follows: "I might state that in the production of evidence here I think it is possible, although I have not reviewed the record, that the court indicated that it was incumbent upon the defendant to produce certain documents which had been returned to him if application was made by the government for their production. That is the civil law but not the criminal law. If I did so state in the record I erred. I want you to understand that the defendant is not compelled to produce anything against himself, even if demand is made upon him in a criminal action. In your consideration bear that in mind, that the defendant is not required or expected, nor can you assume anything against him because he has not produced, if he has them—there is nothing to establish that he has them at the present time—any documents which might have been desired by the government to be produced, if they did so desire to have them produced." In view of the objection of the appellant and the implied admission that the photostatic copies of the papers in the possession of the appellant were correct reproductions of the originals, the appellant was not prejudiced by the remarks of the court, particularly in view of the instruction on that subject. Appellant cites the case of McKnight v. U. S. (C. C. A.) 115 F. 972, in support of his assignment of misconduct. That case has no application to the situation at bar, for here the document in question had been properly obtained by search of the person of the appellant at the time of his arrest. Appellant's unfounded objection to the copy provoked the discussion.

■ Appellant's next specification of error is in the admission of statements made by and between the investigators in the presence of the appellant at the time of his arrest. Agent Burt had a conversation with Agents Goggin and De Kalb in the presence of appellant. He was asked this question: "What conversation did you have with any or either of the agents Goggin or De Kalb upon their return?" To this the

following objection was interposed: "For the purpose of preserving the record I am going to make the same objection to this question, that is, the constitutional objection." This objection is too general. Apparently appellant referred to an objection as to the legality of the search of appellant. If this was the objection it was·not well taken. It was to this question that the witness testified to the following statement made by him: "Well John, it looks as if you have the big shot." When the attempt was made to further develop the conversation between the investigators in appellant's presence, an additional objection was interposed by the appellant "that any statement that Goggin might make in the presence of the defendant was purely self serving as far as the agents themselves are concerned. In fact, they could make any statement they pleased in the presence of any defendant, including this defendant, and then take the stand and say they said such and such in front of a certain defendant, whereas as a matter of fact it is not binding upon the defendant at all, it is purely self serving." The United States attorney said the purpose of the questioning was to develop what the appellant did under the circumstances. The objection was overruled and exception taken, and the witness answered: "Investigator Goggin said, 'Didn't he try to pay off?' And I said, 'Yes, he did.' Q. Did the defendant say anything to that? A. He did not." The witness had already testified that the appellant had offered him a bribe of from $500 to $1,600 to let him "walk out." In view of this testimony, which was competent [Madden v. U. S. (C. C. A.) 20 F.(2d) 289], we cannot see that there was any prejudice resulting to the appellant from the evidence as to this statement in his presence, even if the evidence were inadmissible. It was mere repetition. Ordinarily a defendant under arrest is entitled to remain silent, notwithstanding statements by the arresting officers in his presence, and his silence should not be construed against him. McCarthy v. U. S. (C. C. A.) 25 F. (2d) 298, 299, and cases collated therein. See 16 C. J. 633, § 1259. We think, however, that a statement by one officer to his superior, in the presence of the defendant, that there had been an attempt made by the defendant while in his custody to secure his release by bribery, calls for reply from the defendant, and that his silence in regard thereto would be admissible in evidence.

Judgment affirmed.