**Josh BROCK, Appellant,**
v.
**UNITED STATES of America,**
Appellee.
No. 17069.

United States Court of Appeals
Fifth Circuit.
June 18, 1958.

B. L. Solomon, Marianna, Fla., Tom D. Beasley, DeFuniak Springs, Fla., for appellant.

Harrold Carswell, U. S. Atty., Joseph P. Manners, Wilfred C. Varn, Asst. U. S. Attys., Tallahassee, Fla., for appellee.

Before HUTCHESON, Chief Judge, and JONES and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

Appealing from a conviction and sentence on three counts of an indictment charging him with violations of Sections 5601 and 5606 of the Internal Revenue Laws, 26 U.S.C.A. §§ 5601, 5606, defendant is here insisting that the trial court erred in admitting evidence[1] obtained

---

1. This is the testimony as defendant, with substantial correctness states it:

The evidence on which defendant was convicted consisted of the testimony of two Revenue Agents who, without warrant for search or arrest, entered upon Defendant's property at eight o'clock at night on Jan. 7, 1957, crept up to a concrete block outbuilding located near the dwelling house, smelled the odor of mash, heard the sound of a blower, observed defendant outside the rear of the concrete block out building, flashed a light and his face, chased him around the building, caught him and arrested him.

Prior to the night time raid, the Revenue Agents had entered upon Defendant's premises on four occasions. On Dec. 18, 1956, acting on a tip from an undisclosed source, three agents walked across the pasture and up to the concrete block outbuilding and smelled what they were convinced was fermenting mash. Agent Powell testified that they could not get in the building "but we definitely established to our satisfaction, through smell, that there was an illicit distillery in that building". They returned on Dec. 19, Dec. 20, and Dec. 21, 1956. They observed a man walk from the residence to the outbuilding on Dec. 20, and on Dec. 21 they observed signs at the outbuilding that convinced them a distillery had been run on the previous night.

The concrete block building was "fifty or sixty steps" from the dwelling house. It lay in a fenced field. The dwelling house had a fence which was "40 steps" from the concrete outbuilding and that fence had an opening, large enough to drive a car through, by which access was had between the house and the still house. The barn lay outside the "yard fence" and a smoke house lay inside it.

Agent Powell testified that on Dec. 20, 1956, the dwelling house did not appear occupied—that he saw no smoke coming from the chimney. He saw chickens in the yard and a horse in the field. Agent Saunders testified that on the night of the raid when they allowed the defendant to change clothes in the dwelling house that he saw beds, chairs, possibly a living room suite—but that in the kitchen there was no stove or refrigerator. The defendant testified on Jan. 7, 1957 he was living in the dwelling house—that he had lived there since 1946. Defendant's wife testified that she was living there the night of the raid. She also testified that the family took no meals there, but at a cafe-filling station that had recently begun operating in Vernon, some 3 miles away.

without a warrant of search or arrest by a night raid on what defendant claimed to be his dwelling.

The United States, on its part, stating the question presented for review as whether the evidence was obtained by an unreasonable search within the invoked constitutional provision and was therefore forbidden, insists that there was no search of defendant's dwelling and no unreasonable search of any kind, and the question must be answered in the negative.

For the reasons hereafter stated and upon the authorities cited below,[2] we find ourselves in substantial agreement with this view.

■ If the government's witnesses were to be believed, and apparently they were believed by both the judge and the triers of fact, no search and seizure of the dwelling house was involved. The building to be searched was a small concrete outbuilding located some distance from the nearest residence and separated from it by one fence and one gate and by a distance of approximately 150 to 180 feet, and the nearest residence was not at the time in use as a dwelling house. Conceding, however, that the residence was actually being used by the Brock family as a dwelling, the outbuilding was not a part of, or located within its curtilage, and if it was, the search and seizure in the instant case was not unreasonable.

■ On the night of January 7, 1957, the agents had, by the use of sight and smell, determined that a felony, the operation of a still, was being committed. As they approached the building, the door to it was open, the appellant came out, shone a light upon the agents who gave chase, and during the course of it, the agents could and did observe through the open door that a still was in operation. The arrest was perfected and as incident to that arrest the property under the immediate control and possession of appellant, to-wit, the block house, was searched.

The judgment was right. It is affirmed.

**2.** United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Martin v. U. S., 5 Cir., 155 F.2d 513; Hodges v. U. S., 5 Cir., 243 F.2d 281; Dulek v. U. S., 6 Cir., 16 F.2d 275; Rocchia v. U. S., 9 Cir., 78 F.2d 966; Smallwood v. U. S., 5 Cir., 68 F.2d 244; Cannon v. U. S., 5 Cir., 158 F.2d 952; Dicks & Copeland v. U. S., 5 Cir., 253 F.2d 713.