## PONG YING v. UNITED STATES.
### No. 5041.

Circuit Court of Appeals, Third Circuit.
May 26, 1933.

Hervey S. Moore, of Trenton, N. J., for appellant.

Harlan Besson, U. S. Atty., of Hoboken, N. J., and John W. Griggs, Asst. U. S. Atty., of Trenton, N. J., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below Pong Ying was found guilty on an indictment charging him with receiving 240 grains of smoking opium fraudulently imported into the United States. The evidence clearly sustained this charge and warranted the verdict of guilty rendered and the sentence imposed. At the trial defendant's counsel moved to suppress the evidence on the ground that the testifying narcotic agents had violated his constitutional rights by forcing an entrance into his apartment and there discovering the contraband opium. On the refusal of the court to suppress the evidence this appeal was taken and the sole question involved is whether the search of the defendant's apartment without a warrant was a reasonable one within the meaning of the Fourth Amendment to the Constitution. After a study of the testimony and due consideration had, we are of opinion it was. Our reasons therefor we now state.

On March 22, 1932, the searching narcotic officers were informed by information received from the office of the Narcotic Squad in New York that opium was being smoked at the premises in question. The agents had known from investigation that the defendant and his father had conducted an opium den, and that after the arrest and conviction of the father, the son, the present defendant, continued such business. We pause at this point to say that, if the narcotic agents had gone before a commissioner, and if the above were the only facts they had to secure the issuance of a warrant, a commissioner would hardly have issued one. The information they had was solely hearsay. Instead of pursuing this vain course, the narcotic agents at once went to the premises in question, No. 204 Mulberry street, in the city of Newark. That number is a public apartment building and on the second floor is a chop suey restaurant. Apartment No. 5 in question was fixed up for opium smoking purposes "and it had a door on there that is not ordinarily an apartment house door unless it is for a purpose other than legitimate." The agents went to such room and there detected the fumes of opium coming from that apartment. In addition to such fumes they heard people running within the room. Knocking at the door and receiving no response, they forced it open and found the contraband articles in question. Were they justified in so doing?

The situation of the agents facing this door with the narcotic fumes coming from the room was similar to that in Brock v. U. S. (C. C. A.) 12 F.(2d) 370, 373, where the court said: "That to justify such a search or seizure without a warrant by such an officer in a store, dwelling or other such structure, he must have direct personal knowledge through one or more of his five senses of sight, hearing, smell, taste or touch that the persons suspected whose premises are to be searched or whose property is to be seized are committing the suspected misdemeanor in his presence."

Now here we have not a mere suspicion that a violation of law had been committed or was likely to be committed, but one of the then actual commission of an unlawful act. There was some one within the room. Unburning opium in a room would, of course, cause no fumes, but burning opium would. So the fact of escaping opium fumes was evidence to the officers that opium was being

used and burned in that apartment. Moreover opium stands in a lawbreaking class of its own. The ease with which it can be transported, concealed, and distributed, and the horrible effects incident to its use, have moved Congress to require the possessor of such opium to prove its lawful importation. See section 174, 21 USCA, providing: "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

With these facts before the narcotic officers, we think they would have been derelict in their duty had they not acted promptly and effectively to enter and search the apartment. What constitutional rights were violated in their so doing? The defendant, whose counsel claims constitutional protection for him, was within and in control of apartment No. 5. Some one within those premises created the fumes of the unlawful drug which unerringly brought the officers following the fumes face to face with the entrance thereto. The proof of guilty conduct within the apartment was evidenced outside the door. To throw a shield of constitutional protection over a lawbreaker who has himself created the evidence on the outside of his premises that the law is being violated within such premises is to make the constitutional provision not a means of protecting against unwarranted entrance, but a barrier to lawful entrance by a vigilant officer where the evidence of lawbreaking comes from the premises thus sought to be shielded from all efforts to enforce the law. The claim of constitutional privilege in this case has not a trace of legality in it.

■■ In reaching this conclusion we have not overlooked the contention of counsel that "the case of Taylor v. United States, 286 U. S. 1, 52 S. Ct. 466, 467, 76 L. Ed. 951, is directly in point," and that "everything said by Mr. Justice McReynolds in the Taylor Case, supra, is equally applicable to the facts of the instant case." We cannot agree therewith.

In Go-Bart Importing Co. v. U. S., 282 U. S. 344, 51 S. Ct. 153, 158, 75 L. Ed. 374, the Supreme Court said: "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." In accord therewith, the

Taylor Case was decided on its own facts and circumstances. We here note that it was an uncontested case. The facts and circumstances were such that the solicitor general did not defend the search and seizure and admitted "that in his opinion * * * the entry by the agents was wrongful and the search and seizure unreasonable." And the Supreme Court said: "With this view we agree. The judgment below must be reversed," adding, "We think, in any view, the action of the agents was inexcusable and the seizure unreasonable"; and also: "This record does not make it necessary for us to discuss the rule in respect of searches in connection with an arrest. No offender was in the garage; the action of the agents had no immediate connection with an arrest. The purpose was to secure evidence to support some future arrest." Bearing the facts of the Taylor Case in mind, it is clear the facts and circumstances in the present case are wholly different. In the Taylor Case the officers had a view of the interior of the garage and then saw no one was in it. In the present case the officers knew that apartment No. 5 had people in it, and that opium was in the apartment and was being burned, as was evidenced by the fumes. In the Taylor Case the officers saw no one was in the garage, and consequently no arrest of a lawbreaker was in their power or the scope of their duty. In the present case the officers had proof from the opium fumes that a violation of law was being perpetrated. In the Taylor Case the entry was not to arrest a suspected criminal. In the present case it was to arrest an acting criminal. In the Taylor Case, when the entry was made, no arrest was then, or could be, made, for there was no one in the garage to arrest. In the instant case, when the entry was made, the defendant was himself caught, red-handed, burning the opium, and was then and there arrested.

Following the admonition of the Supreme Court, supra, that each case of reasonableness should be decided on its own facts and circumstances, we are clear that what was decided in the Taylor Case, on its own facts and circumstances, does not control the different facts and circumstances of the present case, and that neither in that case nor in any other has the Supreme Court varied the law of the right to search without a warrant when a crime is being committed in the presence of Government officers.

The judgment below is affirmed.