## PAPANI v. UNITED STATES.
### No. 8062.

Circuit Court of Appeals, Ninth Circuit.
May 25, 1936.

Sol A. Abrams, of San Francisco, Cal., for appellant.

H. H. McPike, U. S. Atty., and W. E. Licking, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellant was convicted on the fourth, fifth, sixth, and seventh counts of the indictment and appealed. The fourth and fifth counts charged violations of 26 U.S.C.A. § 1182; the sixth count charged violation of 26 U.S.C.A. § 1441; and the seventh count charged violation of 26 U.S.C.A. § 1440.

Witness Harkins, an investigator for the government, testified that on September 10, 1935, he placed under observation certain premises in Millbrae, San Mateo county, Cal.; that he saw a car being driven into the garage of the premises; that at the time the car "was high on the springs, and was apparently empty." It also appeared from this testimony that about twenty-five minutes later, appellant "looked up and down the street, in both directions, and then immediately thereafter the car came out of the garage"; that "at that time the car was down on the springs and rode much lower." The officer followed the car to San Francisco, where the car was seized and the driver, one Hebert, was arrested. In the car were found 40 cans of alcohol, each can being a "5-gallon" can. None of the cans the witness saw bore stamps indicating tax payment.

The officer went back to the premises at Millbrae. The record then discloses for the first time that investigators Blair and Meyers were present. The witness detected an odor of whisky which was emanating from the premises. One of the investigators then went to the front door, rang the doorbell, and told a woman who came to the door that he wanted to see appellant. When appellant came to the door, the investigator told him that the investigators had seized the load of alcohol which had come out of the premises and wished to go into the basement, which was the garage spoken of. Appellant made no reply, but slammed the door.

The witness then forced the garage doors and entered the garage, where he found 7 cans of alcohol in the back of a car, and in another part of the garage found 12 other cans of alcohol and 40 gallons of whisky in a "50-gallon" barrel. He also found in this latter place "an electric ager, funnels, and siphon hoses." The witness then started upstairs, heard some one lock the door, and called to appellant to come down, and that he was under arrest. Appellant came downstairs in about five or ten minutes and said that he had purchased the alcohol in another city, but made no reply when questioned regarding the whisky.

The witness also testified:

"The electric ager that we found in the garage is what is commonly used by bootleggers in aging whisky and coloring it. It is supposed to bring the color out of the charred barrel and color the whisky; also it is a quick aging process. It is an electric needle that is heated by electricity and is put into the whisky and brings the whisky to a boil or near that point."

The witness also testified that the appellant occupied the premises so entered as a home, and that there was no sign with the word "Rectifier," nor a sign with the words "Wholesale Liquor Dealer," displayed on the premises.

It was stipulated by counsel that there was no consent given by defendant to the entry by the witness, and that if the other investigators were called as witnesses, their testimony would be the same as that of the witness Harkins.

Appellant, before the trial, moved to suppress the evidence gained by the search, which motion was later denied. Appellant also objected to the introduction of evidence obtained by the search, which objections were overruled.

The validity of the search and the sufficiency of the evidence to support the conviction are the sole questions before us.

As was said in the Go-Bart Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374: "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." See, also, Rocchia v. United States (C.C.A. 9) 78 F.(2d) 966, 969.

The general rule is "that one's house cannot lawfully be searched without a

search warrant," and the exception thereto is that one's house may be lawfully searched without a search warrant "as an incident to a lawful arrest therein." Agnello v. United States, 269 U.S. 20, 32, 46 S.Ct. 4, 6, 70 L.Ed. 145, 51 A.L.R. 409. See, also, Carroll v. United States, 267 U. S. 132, 158, 45 S.Ct. 280, 287, 69 L.Ed. 543, 39 A.L.R. 790; Marron v. United States, 275 U.S. 192, 198, 48 S.Ct. 74, 72 L.Ed. 231.

The two important elements of this exception to the general rule, which must be present in order to constitute the search a "reasonable" one, are (1) the arrest must be lawful; (2) the search must be incident to the arrest.

■ With respect to the first element, the statement in Carroll v. United States, supra, that "the right to search and the validity of the seizure are not dependent on the right to arrest" has reference to the rule existing for the search of an automobile without a search warrant. That rule is that the right to search and the validity of the seizure "are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." The distinction between the search of an automobile and other property, easily moved, and the search of a private dwelling house, is pointed out in the Carroll Case, 267 U. S. 132, at page 153, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, and in Agnello v. United States, supra, 269 U.S. 20, 31, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409. The rule permitting search of an automobile was reasserted in Husty v. United States, 282 U. S. 694, 51 S.Ct. 40, 75 L.Ed. 629, 74 A.L.R. 1407, and has been applied by this court in Lambert v. United States, 282 F. 413, and in King v. United States 1 F.(2d) 931.

However, with respect to a dwelling house, we are taught by Agnello v. United States, supra, 269 U.S. 20, 33, 46 S.Ct. 4, 6, 70 L.Ed. 145, 51 A.L.R. 409, that:

"Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause."

Thus while probable cause for the belief that a "seizable" article is in the dwelling house does not authorize a search of that place without a search warrant, the probable cause is sufficient to obtain a search warrant, under the Fourth Amendment.

■ In United States v. Lefkowitz, 285 U. S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877, 82 A.L.R. 775, it is said:

"The authority of officers to search one's house or place of business contemporaneously with his lawful arrest therein upon a valid warrant of arrest certainly is not greater than that conferred by a search warrant issued upon adequate proof and sufficiently describing the premises and the things sought to be obtained."

It seems, therefore, that the mere fact that a lawful arrest is made does not enlarge the right to "search or seize," but the arrest merely serves the function of a search warrant.

■ Not every arrest is lawful. A person may be lawfully arrested by an officer on a valid warrant for arrest;[1] or where such person is committing crime in the presence of the officers.[2] This court has further held that where the officer has knowledge that a felony has been committed by a person, such person may be lawfully arrested by such officer.[3] And the rule is extended still further, as shown by the following quotation from Carroll v. United States, supra, 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543, 39 A.L.R. 790:

"The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony, and that he may only arrest without a warrant one guilty of a misdemeanor if committed in his presence."

And so it is held that where there is probable cause to arrest for a felony, the arrest is lawful and valid even though made on an invalid warrant for the arrest. Go-Bart Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374. See, also,

---

[1] United States v. Lefkowitz, supra.

[2] Agnello v. United States, supra; Marron v. United States, supra; Herine v. United States (C.C.A. 9) 276 F. 806; Kathriner v. United States (C.C.A. 9) 276 F. 808; Vachina v. United States (C.C.A. 9) 283 F. 35; Bachenberg v. United States (C.C.A. 9) 283 F. 37; Miller v. United States (C.C.A. 9) 9 F.(2d) 382.

[3] Mattus v. United States (C.C.A. 9) 11 F.(2d) 503; Mullaney v. United States (C.C.A.) 82 F.(2d) 638, decided March 9, 1936. See, also, Kwong How v. United States (C.C.A. 9) 71 F.(2d) 71.

United States v. Lefkowitz, supra, 285 U.S. 452, 462, 52 S.Ct. 420, 76 L.Ed. 877, 82 A. L.R. 775.

■ The probable cause, which must exist to enable an officer to arrest for the commission of past felonies, is defined in Stacey v. Emery, 97 U.S. 642, 645, 24 L. Ed. 1035, as follows:

"If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offence has been committed, it is sufficient."

See, also, Carroll v. United States, supra, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790; Kwong How v. United States (C.C.A. 9) 71 F.(2d) 71.

■ The second element which must exist in order to bring a case within the exception to the general rule is that in addition to a lawful arrest, the search must be incident to the arrest. The search must be made at the place of the arrest, otherwise it is not incident to the arrest. Agnello v. United States, supra. In this latter case, 269 U.S. 20, at page 30, 46 S. Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409, and in Marron v. United States, supra, 275 U.S. 192, 198, 48 S.Ct. 74, 72 L.Ed. 231, and in United States v. Lefkowitz, supra, 285 U. S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775, it is said that officers have a right to make a search contemporaneously with the arrest. And if the purpose of the officers in making their entry is not to make an arrest, but to make a search to obtain evidence for some future arrest, then the search is not incidental to the arrest. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Go-Bart Co. v. United States, supra, 282 U.S. 344, 358, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, supra, 285 U.S. 452, 467, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775; Taylor v. United States, 286 U.S. 1, 6, 52 S.Ct. 466, 76 L.Ed. 951.

Summarizing the above rules, it would seem that a search is not incidental to the arrest, unless the search is made at the place of arrest, contemporaneously with the arrest. It is the determination of the purpose in making the entry, which is not always easy, because it frequently happens that officers may have probable cause to arrest for a felony, and in pursuance thereof enter the premises, make a search and an arrest of defendant in the premises. Where it is clear that the purpose was to

search for evidence to support some future arrest, this court has, of course, held the evidence obtained to be inadmissible. Temperani v. United States (C.C.A.) 299 F. 365; Bell v. United States (C.C.A.) 9 F. (2d) 820; Schroeder v. United States (C. C.A.) 14 F.(2d) 500; Cola v. United States (C.C.A.) 22 F.(2d) 742. But in cases where the purpose in making the entry is not clear, it would seem that what the officers say was their purpose for making the entry would be the best evidence of such purpose. However, this court has determined that such statements are not always conclusive, but must be considered with the other actions of the officers, and the surrounding circumstances. Donahue v. United States, 56 F.(2d) 94; Rocchia v. United States, 78 F.(2d) 966. Such rule, under the doctrine of stare decisis, is controlling with respect to this court.

■ It should also be remembered that although the search may be lawful, the seizure may be unlawful, for not all personal property may be seized. 56 C.J. 1186. For the distinction between "seizable" property and property not "seizable," see: Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Gouled v. United States, 255 U.S. 298, 309, 41 S.Ct. 261, 65 L.Ed. 647; Carroll v. United States, supra, 267 U. S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543, 39 A. L.R. 790; Agnello v. United States, supra, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Marron v. United States, supra, 275 U.S. 192, 199, 48 S.Ct. 74, 72 L.Ed. 231; and United States v. Lefkowitz, supra, 285 U.S. 452, 465, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775. In the instant case the property seized was subject to forfeiture to the United States by statute, and comes within the class of "seizable" articles.

■ The government contends that the search in this case is justified as an incident to the arrest of Hebert. Such contention is untenable because the search was not made at the place of arrest. Agnello v. United States, supra.

■ It is also contended that the officers had probable cause to arrest the appellant. It is said that the officers knew at the time of their entry that a felony had been committed in their presence because of the storage of tax-unpaid distilled spirits, and removal of the same from the premises, having knowledge of the spirits seized in Hebert's car. Assuming, without deciding that the officers had probable cause

164

to make an arrest on this ground, and that the arrest was made contemporaneously with the search, it is still necessary to find that the officers made their entry for the purpose of making the arrest. The evidence clearly shows that the officers did not enter with such purpose. When confronted by appellant at the front door, they made no attempt to arrest him, but said, "We wanted to go into the basement." Instead of breaking in the front door, where it would be more reasonable to assume that appellant could be found, they forcibly entered the basement. After making their entry, they made no attempt to arrest appellant until after the search was made, and since the arrest was made, appellant has never been charged with the offense which, it is urged, the officers knew had been committed, namely, the possession of the spirits found in Hebert's possession.

Secondly, it is urged that the officers had probable cause to believe that a further felony was being committed by the unlawful concealment of other tax-unpaid spirits. Assuming that such is the fact, and that the search was contemporaneous with the arrest, again the statements and conduct of the officers is entirely inconsistent with the idea that the purpose of their entry was to arrest defendant for the unlawful concealment of such other tax-unpaid spirits. When the officers had the opportunity to make the arrest at the front door, they refused it and stated that they wanted to go into the basement instead. After making the entry, although there was a door leading from the basement to the upper portion of the house, they made no attempt to use it to arrest defendant until after they made their search. In fact, the officers actually did what they stated their purpose to be, that is, they actually went into the basement, apparently to make a search. As was said in Byars v. United States, supra, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520, "A search prosecuted in violation of the Constitution is not made lawful by what it brings to light," and as said in Taylor v. United States, supra, 286 U.S. 1, 6, 52 S.Ct. 466, 467, 76 L.Ed. 951, "No offender was in the garage; the action of the agents had no immediate connection with an arrest. The purpose was to secure evidence to support some future arrest."

The evidence does not show that the officers attempted to or did make the arrest before making the search. A careful review of the evidence contained in the record justifies but one inference, namely, that the arrest was made as an incident to and as the result of the search and not that the search was made as an incident to an entry made for the purpose of making the arrest.

The evidence obtained by the unlawful search may not be used against appellant. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Byars v. United States, supra.

In view of these conclusions, it is unnecessary to discuss the sufficiency of the evidence.

Reversed.