**UNITED STATES v. KAPLAN.**
No. 36812.

District Court, E. D. New York.
Dec. 17, 1936.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith, James D. Saver, and Frank J. Parker, Asst. U. S. Attys., all of Brooklyn, N. Y., of counsel), for the United States.

Maxwell Shapiro, of New York City (Alvin I. Perlmutter, of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

This is a motion by the defendant for arrest of judgment and to set aside the verdict of a jury finding him guilty on each of the four counts contained in the indictment.

On August 13, 1936, four investigators of the Alcoholic Tax Unit of the United States Bureau of Internal Revenue were in the vicinity of the premises located at 732 East Ninety-Third street, borough of Brooklyn, city of New York, arriving there

at about 8:30 p. m. On approaching the premises the investigators noted an odor of fermenting mash emanating from the building which was a one-family house, bungalow type, with six or seven rooms. As they approached the premises, the odor became stronger. As they moved away, it became weaker.

They kept the premises under observation for about an hour, and then, at about 9:30 p. m. rang the front door bell, whereupon the door was opened by Mrs. Kaplan, the wife of the defendant and a colessee with him of the premises. The investigators at once placed her under arrest, then entered and searched the building. In the attic they found a 500-gallon still set up and operating. It took up the entire three rooms of which the attic consisted. They also found in the attic a large quantity of prune mash and a number of 5-gallon cans containing alcohol, all without stamps. The contents of the cans were ascertained to be fit for beverage use and samples of them revealed a percentage of 71.10 of alcohol by volume. The mash samples contained a percentage of 8.31 of alcohol by volume and were suitable for distillation.

A few hours later, at about 12:15 a. m. the telephone rang and Mrs. Kaplan answered it. She told the investigators that it was her husband calling. Thereupon one of them talked with him on the telephone and asked him to come over. The caller refused, but stated that he was at "Church and Linden" streets, Brooklyn, N. Y. Two of the investigators then went to the corner of "Church and Linden" where they saw two men. One having identified himself as Kaplan, he was placed under arrest. He refused to answer any questions, or to go to the premises where the still had been found, or even to state where he lived. He was subsequently indicted on four counts, namely: (1) Unlawfully possessing an unregistered still (26 U.S.C.A. § 1162); (2) making and fermenting a certain quantity of mash fit for distillation and for the production of alcoholic spirits (26 U.S.C.A. § 1185); (3) failing to file a notice of intention of commencement and continuation in the distillery business and neglecting to file a bond in the form prescribed by law (26 U.S.C.A. § 1165); (4) possessing distilled spirits in containers on which there was affixed no stamp denoting the quantity of such spirits nor evidencing payment of the

Internal Revenue tax imposed thereon (26 U.S.C.A. § 1152a).

A motion was made to suppress the evidence on the ground that it was obtained by means of an unlawful search and seizure. This motion was denied without prejudice to renew the same at the trial. At the close of the government's case, the motion to suppress was renewed and denied. The defendant rested without introducing any evidence and the case went to the jury.

The question raised by defendant's motions is whether the evidence upon which the jury verdict was based had been obtained by unlawful search and seizure in contravention of the Fourth Amendment to the Constitution of the United States which provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

It has been established that as an incident to a lawful arrest a search may lawfully be made of the premises where the arrest took place in order to find and seize things connected with the crime. Agnello v. U. S., 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Donahue v. U. S., 56 F.(2d) 94 (C.C.A.9th). In Carroll v. U. S., 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543, 39 A.L.R. 790, it was said "The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony, and that he may only arrest without a warrant one guilty of a misdemeanor if committed in his presence." See, also, Donahue v. U. S., supra. It remains therefore to be seen whether Mrs. Kaplan was lawfully arrested and the search made was properly incident to her arrest. If the articles seized were thus lawfully obtained, the objection of the Fourth Amendment could not be raised by Mrs. Kaplan even if the evidence was used in the prosecution of a crime other than that for which the arrest had been made. Cf. Gouled v. U. S., 255 U.S. 298, 41 S.Ct. 461, 65 L.Ed. 647.

"All offenses which may be punished by death or imprisonment for a term exceeding one year, shall be deemed felonies."

18 U.S.C.A. § 541. The crimes for which the defendant was indicted fall within this classification. The question thus, is whether the investigators had reasonable and probable cause to believe that a felony was being committed in their presence.

The officers were apprised of the presence of alcoholic liquors by the odor of fermenting mash. To attempt to reconcile all the decisions on the privilege to arrest or search, as based upon the sense of smell, would be difficult, if not impossible. Suffice it to say that the decisions of this Circuit, among others, recognize odor as establishing sufficient probable cause for a search in both liquor and narcotic cases. Lee Kwong Nom v. U. S., 20 F.(2d) 470 (C.C.A.2d); Quandt Brewing Co. v. U. S., 47 F.(2d) 199 (C.C.A.2d). While in the Quandt Case there was the added factor of noise of machinery, bringing into play the sense of hearing, the court's approval of U. S. v. Borkowski, 268 F. 408 (D.C. S.D.Ohio), a case wherein arrest and search were justified when based upon the sense of smell alone, sufficiently indicates its position. The recent case of U. S. v. Lee, 83 F.(2d) 195 (C.C.A.2d) is not to be regarded as at variance with this view. The court, there doubted that there was any evidence of odor of opium emanating from the apartment, and moreover pointed out that the search of the home was not incident to an arrest, but rather prior to one.

It is difficult to comprehend why, if the sense of sight will lay the basis for establishing probable cause for an arrest and search, the sense of smell may not be permitted to rise to equal dignity. Granting that our olfactory organs are not so keenly tuned as those of some of the animal kingdom, yet deficient as we are, the odor of alcoholic liquors remains distinctive to us. How much more so must it be to one whose daily tasks as investigator for the Alcoholic Tax Unit bring him in frequent contact with such odors.

The following cases indicate that we are not alone in adopting this view: U. S. v. Borkowski, supra; McBride v. U. S., 284 F. 416 (C.C.A.5th); Wida v. U. S., 52 F.(2d) 424 (C.C.A.8th); Pong Ying v. U. S., 66 F.(2d) 67 (C.C.A.3d). In Gerk v. U. S., 33 F.(2d) 485 (C.C.A.8th) and Donahue v. U. S., supra, odor plus the noise of operating machinery was held sufficient.

It has been urged by counsel for the defendant that granting that the odor of fermenting mash may have apprised the investigators of the presence of a still, it could not have informed them that the still was unbonded and unregistered. Counsel fails to notice that in Rossi v. U. S., 289 U.S. 89, 53 S.Ct. 532, 77 L.Ed. 1051, the Supreme Court of the United States held that the burden of proof of showing execution of the bond and registration of the still rested on the defendant once the government had shown a still "set-up" in a dwelling house under the control of the defendant. By 26 U.S.C.A. § 1170 it is made a felony to use any still in a dwelling house. Outwardly, at least, the instant premises had the physical appearance of being a dwelling house. When alcoholic odors were detected emanating from such premises, the investigators were reasonably informed of all the elements necessary to the assumption that a felony was being committed in their presence so as to justify their entry for purposes of making an arrest. It would be strange, indeed, if agents entering a building presenting no appearance of a lawful distillery (see 26 U.S.C.A. § 1182 requiring a sign on outside of a distillery) and presenting the outward appearance of a residence, were obliged to justify such entry by showing their knowledge of a fact which even at the trial is part of the burden of defendant to establish and of which no proof need be given by the government.

Under these circumstances the arrest of Mrs. Kaplan was lawful, according to the uncontradicted testimony. She was taken into custody immediately upon her appearance at the door. The search which was made was subsequent to and incident to the arrest, and did not precede it. That the entry was made for purposes of making an arrest is best evidenced by the fact that the first thing done was to make an arrest. Counsel for the defendant has attempted to make much of the fact that Mrs. Kaplan was never taken to the police station and indicted and tried. However, failure to take such action can have no effect upon the validity of the arrest where, as here, the evidence that an arrest was made remains unrefuted. It is not within the province of this court, at least in the consideration of the instant case, to conjure up reasons why no further action was taken in respect to Mrs. Kaplan. Perhaps her husband, in a display of some modern

counterpart of medieval chivalry induced the investigators to permit him to shoulder the entire burden. As an occupant of, and a colessee with her husband of the premises, she might be found to be equally guilty. Her husband should rejoice in her present security rather than complain about her arrest.

■ Granting that a private dwelling cannot be searched without a warrant save as an incident to arrest [Agnello v. U. S., supra; U. S. v. Lee, supra; Papani v. U. S., 84 F.(2d) 160 (C.C.A.9th)], and assuming that an arrest had not been made, the search might still have been justified. A study of the record reveals nothing to indicate that the premises searched were occupied as a residence other than one offhand expression of opinion by one of the investigators that Mrs. Kaplan resided there. When one considers that the evidence shows that the still and its apparatus occupied three rooms of a six or seven room house, the situation seems to merit the conclusion that what may have had the outward appearance of a dwelling, was in fact a distillery of reasonably large proportions.

■ The Constitution does not forbid all searches, but only those which are unreasonable. Carroll v. U. S., supra; Go-Bart Importing Co. v. U. S., 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374. No rigid formula exists for the determination of reasonableness. Each case is to be decided on its own facts and circumstances. Go-Bart Importing Co. v. U. S., supra.

■ Here the hour was early in the evening, necessitating the passage of many hours before it would have been possible to obtain a search warrant. The presence of the investigators, hovering in the vicinity of the building at a time when people were awake, might readily have aroused suspicions and enabled an escape of those suspected into the recesses of a crowded city. Moreover, a delay might have enabled a disconnection of the "still set-up" which has been held necessary for the existence of a still in the legal sense of the word. Cf. U. S. v. Cafero, 55 F.(2d) 219 (C.C.A. 2d). There was every reason to believe that the delay which would have been necessary to obtain a warrant, would have resulted in a material change in circumstances. The situation was far different from that in Taylor v. U. S., 286 U.S. 1, 52 S. Ct. 466, 76 L.Ed. 951, relied on by the defendant. In that case, the agents arrived at 2:30 a. m., a time when people were very apt to be asleep, thus making less probable a change in the state of affairs. The search was of a garage then unoccupied by human beings. Still more important is the fact that there had been complaints about the premises for a period of at least a year showing that haste had not been regarded as vital. To conclude on this set of circumstances that a search was unreasonable, was not to hold that the instant search was unreasonable. As said in Pong Ying v. U. S., supra, on such facts the officers would have been derelict in their duties had they not entered.

■ The Fourth Amendment protects the suspected as well as the innocent. See Weeks v. U. S., 232 U.S. 383, 392, 34 S. Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Agnello v. U. S., supra, 269 U.S. 20, at page 32, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Go-Bart Importing Co. v. U. S., supra, 282 U.S. 344, at page 356, 51 S.Ct. 153, 75 L.Ed. 374. However it was not intended to be extended to protect violators of the law where no public interest was advanced in so doing. Considering the $2 tax placed upon each gallon of distilled spirits by 26 U.S.C.A. § 1150 (a) (1), and the production capacities of a 500-gallon still, it is apparent that there is here present a definitely opposed public interest. The Constitution does not demand that in circumstances such as those of the present case we tie the hands of our law enforcement officials and make them helpless in the face of patent violations of the law.

Motion denied.