**UNITED STATES v. SAM CHIN et al.**
**SAME v. LEE HING et al.**

Nos. 18440, 18441.

District Court, D. Maryland.

July 19, 1938.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md.

Milton H. Talkin, William Curran, and Paul B. Mules, all of Baltimore, Md., for defendants in No. 18440.

William Curran and Paul B. Mules, both of Baltimore, Md., for defendants in No. 18441.

CHESNUT, District Judge.

These two cases present quite similar questions of law and fact; they were argued together and may conveniently be decided in one opinion.

The defendants in the several above entitled cases have all been indicted under Title 21, section 174 of the United States Code, 21 U.S.C.A. § 174, for feloniously, wilfully, fraudulently and knowingly receiving and concealing, etc., substantial quantities of smoking opium illegally imported into the United States. In each case the defendants have moved to suppress certain evidence alleged to have been obtained against them by an unlawful search and seizure in the premises occupied by them as their respective dwellings. The indictments were filed on April 20, 1937, and the motions to suppress were not filed until July 1, 1938, when the cases were first assigned for trial. This is seemingly not a timely application (Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Segurola v. United States, 275 U.S. 106, 112, 48 S.Ct. 77, 79, 72 L.Ed. 186; Rocchia v. United States, 9 Cir., 78 F.2d 966, 970; Brink v. United States, 6 Cir., 60 F.2d 231, 234); and the motions might properly be overruled for that reason, but as the matter has been fully argued upon the merits, and it does not appear that the Government has been prejudiced by the delay in the case, and as the same point would likely arise upon the

Government's evidence at the trial, the motions will be considered on their merits. Gouled v. United States, 255 U.S. 298, 312, 41 S.Ct. 261, 266, 65 L.Ed. 647.

In support of the motions counsel for the defendants rest their cases solely upon the testimony of the arresting officers. They have submitted no other testimony. The facts briefly stated are as follows: Some time prior to March 22, 1937, local inspectors of the Federal Bureau of Narcotics had reason to suspect or believe that opium was being smoked in the premises 211 W. Mulberry Street in Baltimore City. On that night Inspectors Clarke and Lanigan, together with Lt. Bradley of the Baltimore Detective Bureau, went to the premises and, while on the sidewalk of the street, through an open door clearly and plainly detected the smell of burning opium emanating therefrom. The testimony is convincing and uncontradicted that burning opium has a smell that is peculiar and unique to itself and once perceived cannot be forgotten. The officers were experienced and knew at once from the odor that it was certainly burning opium. The building is an ordinary three or four story house in the middle of a block with a store front on the ground floor and separate entrance by door and stairway to the upper floors which were occupied by various tenants. The atmosphere at the time was noticeably damp after a recent rain and there was testimony to the effect that under such atmospheric conditions opium smoke will descend in the air. The officers had also observed two Chinamen going in and one coming out of the house. As they entered through the open doorway and ascended the stairway, the odor became more distinct and finally led them to a third floor room where the fumes of burning opium were evidently emerging through a partially open door into the hallway. Through the opening Lt. Bradley could see on the mantlepiece several "toys" or cans of opium, a pipe stem and a metal case. The officers pushed the door further open and entered the room and there found Lee Pay and Sam Chin lying on their sides with an opium pipe between them, which was hot and evidently had just been smoked. The arrests were then made and a certain quantity of opium and smoking paraphernalia thereafter seized.

As Inspector Clarke was leaving the building he paused on the landing of the second floor and on looking out of a rear window observed in a rear room of an opposite building, which fronted on the next parallel street, the silhouette of what quite clearly appeared to be a man smoking an opium pipe, which has a distinctive form and shape, with a long stem and bowl somewhat like a door knob. Thereupon the officers proceeded through certain connecting back alleyways to the rear of the latter premises and there on the outside of the building again detected the unmistakable odor of burning opium which they followed through an open door to the floor where they had observed the silhouette and found the room equipped with bunks as an opium smoking den, and some of the defendants smoking opium. They then and there arrested the defendants, Lee Hing, Lee Fook Young and Chin Jen, and seized the opium and smoking paraphernalia which is now sought to be suppressed as evidence. One of the men arrested gave Lt. Bradley $200, apparently as an attempted bribe to halt prosecution. It has been retained as evidence in the case.

Although the testimony is not very explicit on the point it may be assumed that the premises in which the arrests and seizures were made constituted the dwelling or places of abode of one or more of the defendants in the respective cases. The contention in support of the motions is that, as the officers did not have a search warrant in either case, the searches and seizures were not justified under the 4th Amendment, U. S.C.A.Const.Amend. 4. This is undoubtedly the well established law in the federal courts unless the search and seizure were *incidental* to a *lawful arrest* in the cases respectively. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426; Taylor v. United States, 286 U.S. 1, 52 S. Ct. 466, 76 L.Ed. 951; Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159.

The 4th Amendment is a fundamental constitutional bulwark which protects the individual against unlawful and oppressive administrative action in *unreasonable* searches and seizures of personal effects, and is to be liberally applied to promote the great objects which it was designed to accomplish. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct.

420, 76 L.Ed. 877, 82 A.L.R. 775; Go-Bart Importing Co. v. United States, 282 U.S. 344, 356, 51 S.Ct. 153, 157, 75 L.Ed. 374. It has been given effect in this court in cases where the circumstances made it applicable. United States v. Goodhues, D.C., 53 F.2d 696; United States v. Ruffner, D.C., 51 F. 2d 579. It is not necessary for the reasonable protection of the individual to press the amendment to the extent of suppressing evidences of crime seized by an officer of the law incident to his arrest of an offender for a crime committed in his presence (Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790); but the arrest when so made must in good faith have been the primary object of the officer and not a mere pretext for the search and seizure. Henderson v. United States, 4 Cir., 12 F.2d 528, 51 A.L.R. 420; Brown v. United States, 3 Cir., 83 F.2d 383; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775. Each case must be determined on its own particular facts and circumstances. Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374; Pong Ying v. United States, 3 Cir., 66 F.2d 67, 68; Papani v. United States, 9 Cir., 84 F.2d 160.

The controlling question in the case is whether on the facts the officers in good faith made the arrest on probable cause, for a crime which they believed was being committed in their presence. The offense is classed as a felony under the federal law, 18 U.S.C. § 541, 18 U.S.C.A. § 541. It is well settled that an officer with power to arrest in proper cases may lawfully make an arrest without a warrant for a misdemeanor committed in his presence, constituting a breach of the peace, and for a felony, even if not committed in his presence, if he acts on such reasonable circumstances as constitute "probable cause". Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Bess v. United States, 4 Cir., 49 F.2d 884; Papani v. United States, supra; United States v. Murray, D.C.Md., 51 F.2d 516, 518; Baltimore & O. R. Co. v. Cain, 81 Md. 87, 100, 31 A. 801, 28 L.R.A. 688; Heyward v. State, 161 Md. 685, 692, 158 A. 897; 6 C.J.S., Arrest, pages 584–599, § 6. If the arrest was lawful the officers were undoubtedly justified in seizing the contraband articles which were an incident to the crime for which the arrests were made. In fact, no search in the strict sense of the term was made because the articles seized were apparently in plain view of the officers at the time the arrests were made. See Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; United States v. Lefkowitz, 285 U.S. 452, 462, 52 S.Ct. 420, 422, 76 L.Ed. 877, 82 A.L.R. 775.

There is no reasonable doubt on the facts presently being considered that a crime was actually being committed, both under the federal and state law. There was certainly clear evidence that the defendants or some of them, in both cases, were smoking opium at the time of the arrest or immediately prior thereto; and necessarily they had possession of, and in the statutory sense were concealing opium. Under the Federal Food and Drug Act (21 U.S.C. §§ 171, 173, 174, 175, 21 U.S.C.A. §§ 171, 173, 174, 175) the importation into the United States of *smoking opium* is prohibited, and when found it is to be seized and summarily forfeited and may be destroyed, without formal forfeiture proceedings of any character; and any person who imports it contrary to law or conceals or sells it knowing it to have been so imported shall upon conviction be fined not more than $5,000 or imprisoned for not more than ten years, and any alien so convicted may be deported. And by section 174 it is provided: "Whenever on trial for a violation of this section defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." Under the Harrison Narcotic Act (26 U.S.C. § 1383 etc., 26 U.S.C.A. § 1383 et seq.), enacted under the taxing power of Congress, the possession of opium (with exceptions not here material) without compliance with the statutory taxing provisions is prohibited and punished. United States v. Daugherty, 269 U.S. 360, 46 S.Ct. 156, 70 L.Ed. 309. The State of Maryland has also enacted similar legislation against narcotic drugs, including opium. See 1935 Supp.Ann.Code of Maryland, Art. 27, §§ 283–285Z. The statute is known as the Uniform Narcotic Drug Act. By section 285M it is provided that —"Any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by narcotic drug addicts for the purpose of using narcotic drugs or which is used for the illegal keeping or selling of the

same, shall be deemed a common nuisance. No person shall keep or maintain such common nuisance." And by section 285U, it is made the duty of the State Department of Health and all peace officers to co-operate with the agencies charged with the enforcement of the laws of the United States relating to narcotic drugs; and it is especially provided that section 4A of Article 35 of the Code of Public General Laws (commonly known as the Bouse Act which suppresses, in the trial of misdemeanors, evidence procured by illegal searches and seizures) shall not apply.

 On the facts the officers had reasonable cause to believe that a felony was being committed in their presence and had probable cause for the arrests. Clear evidence of the crime existed on the public highways outside of the premises and justified their entrance through the open doors. While the smell of the burning opium was the principal and most convincing cause for their action, the facts show other circumstances also contributing to the existence of probable cause. It was not essential that the perception of the crime should come from sight alone, as the sense of smell can also be acted upon in such cases where it affords such convincing evidence as in this case. 6 C.J.S. Arrest, page 599, § 6; Benton v. United States, 4 Cir., 28 F.2d 695; De Pater v. United States, 4 Cir., 34 F.2d 275, 276, 74 A.L.R. 1413; Cardinal v. United States, 6 Cir., 79 F.2d 825. Mere suspicion would not have justified the entry with or without a search warrant (Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159), but here the testimony shows the officers had what really amounted to knowledge. In cases of doubt, as has been frequently stated in other cases in this court, it is much better for the officers to obtain a search warrant before entering a dwelling, but here the hour (near midnight) and the nature of the case, would have rendered that course futile or likely ineffective.

 It may be suggested that the federal officers could not have known or reasonably have believed that the opium being smoked had been imported into the United States contrary to law under the Food and Drug Act, or that the tax provisions under the Harrison Narcotic Act had not been complied with. This view seems to have been a controlling consideration leading to the suppression of the evidence in the somewhat similar case of United States v. Tom Yu, D.C.Ariz., 1 F.Supp. 357, where attention is called to sections 721 and 723 of the United States Code, Title 26 (now sections 1057 and 1059), 26 U.S.C.A. §§ 1057, 1059, imposing a tax of $300 a pound on smoking opium and requiring a bond for $100,000, when manufactured within the States. But this view in my opinion does not give sufficient weight to the now well known facts regarding the use of opium, the traffic in and use of which has become an extensive international evil. The federal tax referred to is in effect prohibitive and no taxes have been collected under it for twenty years.[1] And it is per-

---

[1] The Commissioner of Internal Revenue has advised the United States Attorney in this case as follows:

"Treasury Department
"Washington
"Office of Commissioner of Internal Revenue
"A & C: Col: stp
"Hon. Bernard J. Flynn,
"United States Attorney,
"Baltimore, Maryland.
"Sir:
"A representative of the Bureau of Narcotics advises that you have requested a statement indicating whether or not the records of this Bureau show that anyone has engaged in the manufacture of smoking opium under the Act of January 17, 1914 (38 Stat. 277, 26 U.S. Code, Sections 1057 to 1061 [26 U.S.C.A. §§ 1057–1061]) and Treasury Decision 2211 promulgated thereunder; also, whether the records indicate that any stamps have been printed and distributed by Collectors of Internal Revenue during recent years to collect the tax of $300.00 per pound on smoking opium.

"In this connection, you are advised that a careful review of the records and reports of this Bureau extending back to January 17, 1914, fails to disclose that anyone has qualified under the foregoing Act as a manufacturer of smoking opium or that any stamps have been shipped to and sold by Collectors of Internal Revenue to collect the tax of $300.00 per pound on smoking opium. It appears, however, that a total of a few thousand dollars was collected some 20-odd years ago on opium manufactured for smoking purposes but that the collections were made by assessment rather than the sale of stamps and were levied because of the discovery of violations of the law by illicit manufacturers.

"In the Annual Report of the Commissioner of this Bureau for the fiscal year 1915, the statement is made to the effect

missible to take—"judicial notice that opium is not commercially a domestic product. Perverted to evil uses, it is in general an outlaw. Its presence in this country, apart from statutes, is practically a conclusive presumption of importation. Presence and possession in the accused invoke the statutory presumption that he imported it or received it after importation. And since its importation is unlawful these six years, in view of its nature the statutory presumption that it was imported within said period and to the knowledge of any receiving it is not unreasonable to the extent hereinbefore indicated." United States v. Yee Fing, D.C.Mont., 222 F. 154, 156. Furthermore section 181 of Title 21 U.S.C., 21 U.S.C.A. § 181, provides: "Opium prepared for smoking found within the United States shall be presumed to have been imported contrary to law, and the burden of proof shall be on the claimant or the accused to rebut such presumption." [2] Even if it were conceded that there is a bare possibility that opium could be smoked in the United States at the present time under circumstances that would make it not contrary to the federal law, the possibility is so remote that the officers were justified in making the arrests in these cases. There is certainly nothing in the facts with which we are now dealing which suggests that what the officers observed was not a crime, both federal and state, and they had probable cause to believe that a federal felony was actually being committed in their presence.

Counsel for the defendants also rely strongly upon United States v. Lee, 2 Cir., 83 F.2d 195, where in a similar prosecution evidence of the possession of opium as a result of a search and seizure was suppressed. But the facts of the case make it clearly distinguishable. There the search and seizure were not incidental to the prior lawful arrest but were made at least several hours prior to the arrest when the defendant was not present, and the arrest when made was in consequence of the unlawful search. On the other hand, the odor of burning opium was held sufficient to justify an arrest in United States v. Boyd, D.C.Wash., 1 F.2d 1019; United States v. Chin On, D.C.Mass., 297 F. 531, and in Pong Ying v. United States, 3 Cir., 66 F.2d 67. See also Lee Kwong Nom v. United States, 2 Cir., 20 F.2d 470. The facts of the Pong Ying and Chin On Cases are more nearly like those of the present than any other cases which have been called to my attention. In his opinion for the court in the Pong Ying Case, Circuit Judge Buffington forcibly said (page 68): "Proof of guilty conduct within the apartment was evidenced outside the door. To throw a shield of constitutional protection over a lawbreaker who has himself created the evidence on the outside of his premises that the law is being violated within such premises is to make the constitutional provision not a means of protecting against unwarranted entrance, but a barrier to lawful entrance by a vigilant officer where the evidence of lawbreaking comes from the

that 'The tax of $300.00 per pound imposed by the Act of January 17, 1914, and the requirement of that Act of a bond of not less than $100,000.00 from manufacturers of smoking opium has prevented anyone from engaging legally in such business.'

"[Signed] Milton E. Carter,

"Acting Commissioner."

[2] In the official report of the Federal Commissioner of Narcotics, for the year 1936, entitled "Traffic in Opium and other Dangerous Drugs," it is stated on pages 84 and 85:

"There is at present no lawful manufacture of prepared opium in the United States. The importation of prepared opium, or of opium prepared for smoking, into the United States, the admission of the substance for transfer or trans-shipment to another country, and the exportation thereof to another country are absolutely prohibited.

"It is believed that there is compara-

tively little opium smoking in the United States among the native population, although there continues to be a certain indulgence in the habit, more particularly among the alien population, especially the Chinese. There were reported during the year 10 cases of violations of the law governing the manufacture of smoking opium, as compared with 12 in 1935. * * *

"A total of 221 kilograms and 347 grams of smoking opium was seized and confiscated during the calendar year 1936. The exact origin of this smoking opium could not be definitely determined, but the great bulk was undoubtedly manufactured and packed some where in the Far East, since it was seized from vessels arriving directly or indirectly from far eastern ports in the manner hereinbefore described in the discussion of seizure. When no longer needed as evidence, all smoking opium seized is destroyed by the Government."

premises thus sought to be shielded from all efforts to enforce the law. The claim of constitutional privilege in this case has not a trace of legality in it." It seems unnecessary to review the numerous cases arising during the period of National Prohibition where the sense of smell of fermenting mash or of intoxicating liquor was made the basis of search and seizure by prohibition agents. The numerous cases in the lower federal courts presented some diversity of view as to the legality of searches without warrants in such cases; but finally the Supreme Court in Taylor v. United States, 286 U.S. 1, 6, 52 S.Ct. 466, 467, 76 L.Ed. 951, in an opinion by Mr. Justice McReynolds, said: "Prohibition officers may rely on a distinctive odor as a physical fact indicative of possible crime; but its presence alone does not strip the owner of a building of constitutional guaranties (Const. Amend. 4) against unreasonable search. This record does not make it necessary for us to discuss the rule in respect of searches in connection with an arrest. No offender was in the garage; the action of the agents had no immediate connection with an arrest. The purpose was to secure evidence to support some future arrest." In the Second Circuit the Taylor Case has been regarded as establishing a general rule that a sense of smell *alone* by officers of the law is not sufficient to justify the entry of a building to search for supposedly contraband liquor. United States v. Kaplan, 89 F.2d 869. But it is clear that the Taylor Case did not deal with the legality of a search and seizure consequent upon a lawful arrest. The distinction has been clearly made in the case of Pong Ying v. United States, supra.

Furthermore the legal status within the United States to smoking opium is not quite parallel to that of intoxicating liquor under the National Prohibition Act, 27 U.S.C.A. § 1 et seq.; and the evidence in this case indicates a substantial difference as to the sufficiency of probable cause of crime, between the smell of intoxicating liquor and that of burning opium. The smell of intoxicating liquor emanating from a building does not of itself imply that some person is present therein unlawfully manufacturing or possessing it, and without other evidence of probable cause for an arrest does not justify an entry and search without a warrant; but the smell of burning opium is very directly associated with the smoking of opium which does imply the presence of human agency, and of itself connotes (with possibly rare exceptions) the contemporaneous commission of crime, which it is the duty of federal officers to suppress by making an arrest if the offender can be then apprehended. The probable cause in this case was equally as good as where a police officer hears a cry of murder within a house, with other indications of serious disorder, and enters to make an arrest to stop an assault or quiet a disturbance of the peace.

And finally it may be observed that the 4th Amendment, U.S.C.A.Const. Amend. 4, forbids only *unreasonable* searches and seizures, which historically have never included those incidental only to lawful arrests; and the facts of the instant cases are quite unlike any of those in which the Supreme Court from Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, to the present time, has so consistently and liberally upheld and applied the amendment to protect the individual against the irregular exercise of arbitrary power.

There is some little difference between the facts in the two cases under consideration but not sufficient to require a different result. My conclusion is that the motions in both cases should be and they are hereby overruled.